**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| MATTHEW A. MISHAK, | ) | CASE NO: 1:17CV1543 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| SCOTT F. SERAZIN, et al., | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |

This case is before the Court upon consent of the parties, entered October 10, 2017.

(Doc. No. 20.)  Currently pending is Defendants City of Elyria and Scott F. Serazin's  Motion

for Partial Judgment on the Pleadings.  (Doc. No. 16.)  Plaintiff Matthew Mishak filed a Brief in

Opposition on October 17, 2017, to which Defendant replied.  (Doc. No. 23, 25.)

For the following reasons, Defendants' Motion (Doc. No. 16) is GRANTED IN PART

and DENIED IN PART as follows.

## I.  Procedural Background

On July 21, 2017, Plaintiff Matthew Mishak ("Plaintiff" or "Mishak") filed a *pro se*

Complaint in this Court against Defendants Scott F. Serazin (Office of the Elyria Law Director,

in his individual and official capacities) and the City of Elyria, alleging various state and federal

claims arising from his demotion and eventual termination as prosecutor for the City of Elyria.

(Doc. No. 1.)

Defendants filed an Answer and Partial Motion for Judgment on the Pleadings on

September 8, 2017.  (Doc. Nos. 10, 11.)

Mishak thereafter retained counsel and filed his First Amended Complaint on September 22, 2017. (Doc. No. 13.) Defendants' Partial Motion for Judgment on the Pleadings was denied as moot based on the filing of the First Amended Complaint. (Doc. No. 21.)

On October 3, 2017, Defendants filed a "Motion for Partial Judgment on the Pleadings responsive to the Amended Complaint," in which they seek judgment in their favor with respect to six of Mishak's twelve claims. (Doc. No. 16.) Mishak filed a Brief in Opposition on October 17, 2017, to which Defendants replied.[1] (Doc. Nos. 23, 25.)

## II. Factual Allegations

The First Amended Complaint contains the following factual allegations.

Plaintiff Mishak served over ten years in the public sector as a prosecuting attorney. (Doc. No. 13 at ¶ 5.) At all times relevant to this action, Defendant Serazin served as the Law Director for the City of Elyria. (*Id.* at ¶ 6.)

Mishak and Serazin worked together at the Lorain County Prosecutor's Office from 2006 to 2011, where they became friends. (*Id*. at ¶ 10.) Mishak struggled with Attention Deficit Hyperactivity Disorder ("ADHD"), and Serazin was aware of Mishak's condition throughout his employment with the City of Elyria. (*Id*.)

In 2010, Serazin decided to run for Law Director for the City of Elyria and asked Mishak to manage his campaign, and Mishak accepted. (*Id.* at ¶ 11.) Serazin won and, as Law Director, appointed Mishak to the salaried position of Chief Prosecutor for the City of Elyria, on January 3, 2012. (*Id*. at ¶ 12.) In 2012, Serazin caused Mishak to seek and receive appointment as

---

[1] In addition, a Case Management Conference was conducted on October 12, 2017, at which time certain case management deadlines were set. (Doc. No. 22.)

Prosecutor for the Village of Grafton. (*Id*. at ¶ 13.) This position was an hourly one, and had been held by Mishak's predecessor for many years. (*Id*.)

By early 2013, "it became clear that Serazin's attitude towards Mishak changed in a negative way." (*Id*. at ¶ 14.) Mishak was allegedly placed under scrutiny unlike other staff attorneys. (*Id*. at ¶ 15.) In addition, Serazin was verbally abusive and engaged in "harshly criticizing behavior directly related to Mishak's ADHD." (*Id*. at ¶ 15.)

In mid-2013, Mishak became the subject of an ethics investigation by the Lorain County Bar Association (subsequently resolved favorably to Mishak), which Serazin improperly disclosed to the local press. (*Id*. at ¶ 16.) This ethics investigation had not at that point elicited a probable cause finding and was ultimately dismissed for lack of probable cause. (*Id*.) Mishak asserts Serazin's disclosure of this confidential investigation to the local press was a "severe violation of the Ohio Rules of Professional Conduct and evidenced his discriminatory animus towards Mishak." (*Id*.)

In December 2013, Serazin "demoted Mishak from Chief Prosecutor to Prosecutor, reduced his pay, significantly modified Mishak's job responsibilities, and removed Mishak from his assigned courtroom." (*Id*. at ¶ 17.)

In May 2014, Serazin circulated a policy regarding representation of "outside jurisdictions," which required Mishak to take personal or vacation time for work done for the Village of Grafton, depending on "undelineated circumstances." (*Id.* at ¶ 19.) Mishak claims the policy was "vague and did not clearly indicate when outside work could and could not be performed by City of Elyria Law Department Employees." (*Id*.)

In July 2015, Serazin placed a letter in Mishak's public personnel file, ostensibly aimed

at reprimanding Mishak for failing to file a notice of appearance in a case, but otherwise severely criticizing Mishak's honesty, integrity, respect for the law and accusing Mishak of "terrorist" affiliations.  (*Id*. at ¶ 20.)

On July 22, 2016, Serazin called Mishak to Serazin's office with his Chief of Staff, Amanda Deery, and discussed terminating Mishak from his employment for allegedly unjustly enriching himself by "double dipping," due to his representation of the Village of Grafton.  (*Id*. at ¶ 21.)  Mishak was placed on paid suspension with time and billing to be reviewed.  (*Id*. at ¶ 22.)  A physician's letter regarding Mishak's ADHD was requested by Serazin.  (*Id*.)  Serazin formalized Mishak's suspension with a twelve (12) page letter.  (*Id*.)

Mishak supplied the requested letter from his physician to Serazin on August 1, 2016.  (*Id*. at ¶ 23.)  At that time, Mishak notified Serazin of his need to take medical leave due to his ADHD.  (*Id*. at ¶¶ 129-130.)  On August 2 or 3, 2016,[2] Serazin terminated Mishak's employment.  (*Id*. at ¶¶ 24, 131.)

On August 4, 2016, Serazin initiated contact with Ms. Lisa Roberson ("Roberson"), a Chronicle-Telegram (local Elyria newspaper) reporter.  (*Id*. at ¶ 25.)  In an office interview, Serazin told Roberson that Mishak was terminated for stealing from the City of Elyria and an investigation was ongoing.  (*Id*. at ¶ 26.)  Serazin provided copies of Mishak's suspension and termination letters to Roberson.  (*Id*.)  Mishak alleges that, at that time, the termination letter had yet to be delivered to him.  (*Id*.)  The suspension letter and termination letter contained a number of statements which Mishak claims are "completely and wholly false and/or made with reckless

---

[2] In paragraph 24 of the First Amended Complaint, Mischak states he was terminated on August 2, 2016.  Thereafter, in paragraph 131, he states he was terminated on August 3, 2016.

disregard for the truth." (*Id*. at ¶¶ 25- 27.)

Mishak first learned of his dismissal on August 4, 2016, when Roberson called seeking a comment. (*Id*. at ¶ 29.) On August 5, 2016, the front-page headline of the Chronicle Telegram read "Elyria fires prosecutor; – 'double dipping' alleged – Law Director Says that Matt Mishak did work for Grafton while on the clock for Elyria," followed by the article about Roberson's interview with Serazin. (*Id*. at ¶ 30.)

Shortly thereafter, Serazin contacted the Village of Grafton and offered to have Elyria's Law Department assume the Village's prosecutorial responsibilities. (*Id*. at ¶ 31.) Subsequent to that contact, Mishak was relieved of his position with the Village of Grafton. (*Id*. at ¶ 32.)

Serazin also contacted the Lorain County Prosecutor's Office, the Lorain County Sheriff's Office, and the Ohio Auditor's Office and "published materially false statements in a malicious action to damage Mishak's good reputation." (*Id*. at ¶¶ 38, 39, 40.)

Mishak filed Complaints with the EEOC for disability discrimination. (*Id.* at ¶ 34.) He subsequently asked that they be dismissed and that he be issued a Right to Sue letter. (*Id*.) The EEOC matter "has been dismissed at his request." (*Id*.)

The First Amended Complaint asserts the following 12 claims: (1) defamation *per se* – libel and slander (Count 1); (2) invasion of privacy– false light (Count 2); (3) malicious prosecution under 42 U.S.C. § 1983 (Count 3); (4) abuse of process under 42 U.S.C. § 1983 (Count 4); (5) state and federal disability discrimination claims based upon alleged failure to accommodate (Counts 5 and 6); (6) state and federal disability discrimination claims based upon alleged disparate treatment (Counts 7 and 8); (7) state and federal retaliation claims (Counts 9 and 10); (8) retaliation claim under the Family & Medical Leave Act (Count 11); and (9) loss of

employment under 42 U.S.C. § 1983 (Count 12).

### III. Standard of Review

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.' " *Tackett v. M & G Polymers*, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.' " *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679, 129 S.Ct. 1937.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly*, 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

## IV. Analysis

### A. Section 1983 Claims

Mishak alleges a number of claims against Defendants pursuant to 42 U.S.C. § 1983. To maintain a claim under Section 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991). Section 1983 "is not itself a source of substantive rights," but merely provides "a

7

method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Baker*, 443 U.S. at 140.

Defendants move for judgment on the pleadings with respect to Mishak's claims under 42 U.S.C. § 1983 for malicious prosecution (Count Three), abuse of process (Count Four), and "loss of employment pursuant to the ADA and FMLA" (Count Twelve). (Doc. No. 16 at 7-16.) The Court will discuss each of these claims in turn, below.

### 1.    Malicious Prosecution (Count Three)

Count Three of First Amended Complaint (captioned "Section 1983- Malicious Prosecution") alleges "Defendant Serazin's conduct violated Mishak's right to be free of unlawful governmental seizures, such as that implemented here when subjecting Mishak to malicious prosecution, and therefore violates Federal law and/or the Constitution of the United States." (Doc. No. 13 at ¶ 62.) Mishak further asserts as follows:

> 64. Serazin showed malice in instituting or continuing the prosecution against Mishak by alleging to the Lorain County Prosecutor, Lorain County Sheriff and the Auditor for the State of Ohio, that Mishak had committed criminal violations.

> 65. Serazin lacked probable cause to believe Mishak had committed crimes, at all time relevant herein * * *

> 66. Serazin abused the power of his public office and violated the Ohio Rules of Professional Conduct by making extrajudicial comments to the press that had a substantial likelihood of heightening public condemnation of Mishak, depriving Mishak of procedural due process as protected under Federal Law and/or the Constitution of the United States.

> 67. Said prosecution instituted by Serazin was needlessly protracted.

> * * *

69. The City of Elyria and Serazin engaged in the above-described actions recklessly, maliciously, and intentionally entitling Mishak to an award of statutory, compensatory, and other damages.

(*Id*. at ¶¶ 64-69.)

To succeed on a malicious prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following elements. First, the plaintiff must show a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute. *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010). *See also Martin v. Maurer,* 581 Fed. Appx. 509, 511 (6th Cir. 2014); *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005); *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001); *Skousen v. Brighton High Sch*., 305 F.3d 520, 529 (6th Cir. 2002). Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show there was a lack of probable cause for the criminal prosecution. *See Sykes*, 625 F.3d at 308; *Fox*, 489 F.3d at 237; *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 675 (6th Cir. 2005). Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Sykes*, 625 F.3d at 309. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Id. See also Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."). *See also Williams v. Schismenos*, 258 F.Supp.3d 842, 859 (N.D. Ohio 2017).

Defendants argue judgment should be granted in their favor with respect to this claim

because "nowhere does plaintiff allege he was actually delayed, charged with any crime, indicted, arrested, or tried for any crime." (Doc. No. 16 at 7-8.) Defendants assert Mishak's allegations, therefore, fail as a matter of law to state a claim for malicious prosecution and judgment should be entered their favor.

In his Brief in Opposition, Mishak requests the Court dismiss this claim without prejudice. (Doc. No. 23 at 8.) He argues Defendant Serazin instigated an investigation by the Ohio Auditor, which "has the power to institute criminal charges if it finds issue with any investigation into funding." (*Id.*) Mishak asserts "that investigation is still ongoing, preventing Plaintiff from pleadings facts sufficient at this time to sustain the claim." (*Id.*) Thus, he asks the Court to dismiss Count Three without prejudice and allow him to amend his Complaint "when these claims do become ripe at a later date." (*Id.* at 3.)

In their Reply Brief, Defendants state only that: "Plaintiff concedes he has, currently, failed to allege facts which would sustain [a claim for malicious prosecution], and that the claim should, therefore, be dismissed." (Doc. No. 25 at 1.) Defendants do not appear, however, to oppose Mishak's request that this claim be dismissed without prejudice.

The Court finds it would be appropriate to dismiss Mishak's Section 1983 malicious prosecution claim without prejudice. Mishak argues, and Defendants do not contest, there remains the potential a malicious prosecution claim might exist depending on the outcome of the Ohio Auditor's investigation. Under these circumstances, the Court finds it would be premature to dismiss this claim without permitting Mishak an opportunity to seek leave to amend his First Amended Complaint once the investigation is concluded. *See e.g., Thornsbury v. Crowe*, 2015 WL 163476 at * 3 (S.D. Ohio Jan. 13, 2015) (dismissing plaintiff's malicious prosecution claim

without prejudice where potential remained for criminal charge to be brought against her).

Accordingly, Mishak's claim of malicious prosecution under Section 1983 is dismissed without prejudice.

### 2. Abuse of Process (Count Four)

In Count Four of the First Amended Complaint (captioned "Section 1983– Abuse of Process"), Mishak states as follows:

> 71. If this Honorable Court happens to find that a legal proceeding against Mishak, in the form of reports made by Serazin to the Lorain County Prosecutor, Lorain County Sheriff, and Auditor of the State of Ohio, have been set in motion in proper form and with probable cause, Mishak alleges the following.
>
> 72. Serazin subjected Mishak to conduct that occurred under color of state law.
>
> 73. Serazin's conduct deprived Mishak of procedural due process guaranteed under Federal Law and/or the Constitution of the United States.
>
> 74. That the proceeding instituted by Serazin against Mishak has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, to wit: retaliate against Mishak, interfere with his employment, and harm his good and longstanding reputation in the community.
>
> 75. That direct substantial damage has resulted to Mishak from Serazin's wrongful use of process and that Mishak was obliged to defend himself and to expend money and time in his defense; that he lost time previously devoted to his professional business, from the ordinary pursuits in his life and home, and that the quality of his life was diminished by it, all to his great damage.
>
> 76. The City of Elyria and Serazin engaged in the above-described actions recklessly, maliciously, and intentionally entitling Mishak to an award of statutory, compensatory, and other damages.

(Doc. No. 13 at ¶¶ 71-76.)

Defendants argue judgment should be entered in their favor with respect to this claim because the Sixth Circuit does not recognize a cause of action for abuse of process under Section 1983. (Doc. No. 16 at 11.)

11

Mishak argues this claim should be dismissed without prejudice because "like Plaintiff's claim for malicious prosecution, [it] is predicated upon Defendant Serazin's unjust use of the State Auditor's office to launch an investigation against Plaintiff." (Doc. No. 23 at 9.) Because that investigation has not yet concluded, Mishak asserts he was "unable to plead facts showing there was no finding of probable cause that [he] did anything illegal and is otherwise not able at this time to show the full extent of the wrongful perversion of the instituted process." (*Id*. at 9-10.) Accordingly, Mishak maintains this claim is "not ripe," and should be dismissed without prejudice.

Mishak's argument is without merit. The Sixth Circuit "has consistently declined to recognize an abuse of process claim under 42 U.S.C. § 1983." *Moore v. WesBanco Bank, Inc*., 612 Fed. Appx. 816, 823 (6th Cir. May 21, 2015.) *See also Rapp v. Dutcher*, 557 Fed. Appx. 444, 448 (6th Cir. 2014) ("[A] federal abuse of process claim does not exist in the law of this circuit."); *Schuler v. Village of Newcomerstown, et al.*, 2017 WL 1199170 at * 7 (N. D. Ohio Mar. 31, 2017); *Conrad v. Berea*, 2017 WL 1050389 at * 6 (N.D. Ohio Mar. 20, 2017); *Haley v. Gilbride*, 2014 WL 3789563 at * 8-9 (N.D. Ohio July 31, 2014). In opposing the motion, Mishak has not directed this Court's attention to any legal authority showing an abuse of process claim is cognizable under § 1983 in this Circuit.[3] Thus, there is no basis for dismissal of Mishak's federal abuse of process claim without prejudice.

Defendants' motion for judgment on the pleadings with respect to this claim is, therefore,

---

[3] The sole case cited by Mishak, *Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999), is not applicable. In that case, the Sixth Circuit considered a claim for abuse of process under Ohio law. *Id*. at 718. Here, Mishak's First Amended Complaint clearly pleads the abuse of process claim as arising under federal law; i.e., Section 1983.

granted.

### 3. "Loss of Employment under the ADA and OCRA" (Count Twelve)

In Count Twelve of the First Amended Complaint, Mishak asserts a claim for "loss of employment protected under the ADA and FMLA." (Doc. No. 13 at p. 21.) Specifically, he asserts "Serazin and the City of Elyria's conduct deprived Mishak of rights, privileges, immunities, and due process guaranteed under Federal law and/or the Constitution of the United States, namely terminating Mishak's employment for protected reasons." (*Id*. at ¶ 137.)

Defendants argue judgment should be entered in their favor with respect to this claim because "neither the ADA nor the FMLA may form the premise for a Section 1983 claim." (Doc. No. 16 at 13.)

In his Brief in Opposition, Mishak states as follows: "After reviewing Defendants' argument and cited case law as to this Claim, Plaintiff does not contest that its twelfth cause of action, Section 1983- loss of employment protected under the ADA and FMLA, should be dismissed." (Doc. No. 23 at 12.)

Accordingly, Defendants' motion for judgment on the pleadings with respect to this claim is granted.

## B. Disparate Treatment Claims under the ADA and OCRA

Defendants also move for judgment on the pleadings with respect to Mishak's disability discrimination claims based on disparate treatment. In the Seventh and Eighth Counts of the First Amended Complaint, Mishak states claims for disparate treatment disability discrimination under the Americans with Disabilities Act ("ADA") and Ohio Civil Rights Act ("OCRA"). (Doc. No. 13 at ¶¶ 96-113.) Mishak's ADA claim, Count Seven, alleges as follows:

13

96. Mishak incorporates and restates each of the above paragraphs as if fully set forth herein.

97. Mishak, at all times relevant, is a disabled individual as defined in 42 U.S.C. §1201, et. seq., had a history of said disability, and was regarded as such by his employer.

98. The City of Elyria engaged in disparate treatment of Mishak versus other similarly-situated employees without disabilities.

99. The City of Elyria scrutinized the time records of Mishak from both the City of Elyria and Village of Grafton, filing a public records request with Village Administrators.

100. The City of Elyria failed to investigate the time records for two other Elyria City Prosecutors who also represented other Jurisdictions.

101. Scott Strait is a full-time City of Elyria Prosecutor who also represented the Village of LaGrange in the capacity of Prosecutor.

102. Michelle Nedwick is a full-time City of Elyria Prosecutor who also represented the City of South Amherst in the capacity of Law Director.

103. The City of Elyria failed to scrutinize the record of these similarly-situated employees without disabilities.

104. The City of Elyria engaged in the above-described actions recklessly, maliciously, and intentionally entitling Mishak to an award of statutory, compensatory, and other damages.

(*Id*. at ¶¶ 96-104.)  Mishak's state law claim under the OCRA contains the same factual allegations, alleging a claim under Ohio Rev. Code § 4112.01 *et seq.*  (*Id*. at ¶¶ 105-113.)

To recover on a claim for discrimination under the ADA, a plaintiff must show that he (1) is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his disability.  *See Ferrari v. Ford Motor Company*, 826 F.3d 885, 891 (6th Cir. 2016); *Lewis v. Humboldt Acquisition Corp*., 681 F.3d 312, 317, 321 (6th Cir. 2012) (en banc); *Holiday v.*

*Chattanooga*, 206 F.3d 637, 642 (6th Cir. 2006). A plaintiff may do so "by introducing direct

evidence of discrimination, including evidence that the employer relied upon the plaintiff's

disability in making its employment decision, or by introducing indirect evidence of

discrimination."[4] *Ferrari*, 826 F.3d at 891. Ohio's disability-discrimination statute and the ADA

employ the same analysis. *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 872 (6th Cir.

2007); *Wolfe v. U.S. Steel Corp.*, 567 Fed. Appx. 367, 371 (6th Cir. June 2, 2014). *See also*

*Sessin v. Thistledown Racetrack, LLC*, 187 F.Supp.3d 869, 875 (N.D. Ohio 2016) ("According to

the Sixth Circuit, disability discrimination claims under the ADA and O.R.C. § 4112.02 can both

be analyzed solely under the ADA." )(citing *Brenneman v. MedCentral Health Sys.*, 366 F.3d

412, 418 (6th Cir. 2004)).

Defendant claims Mishak's federal and state disparate treatment claims should be

---

[4] If there is direct evidence a plaintiff suffered an adverse employment action because of
his or her disability, the plaintiff then "bears the burden of establishing that he or she is
'disabled' " and " 'otherwise qualified' for the position despite his or her disability: a) without
accommodation from the employer; b) with an alleged 'essential' job requirement eliminated; or
c) with a proposed reasonable accommodation." *Ferrari*, 826 F.3d at 891. Once the plaintiff has
established these elements, the employer "bear[s] the burden of proving that a challenged job
criterion is essential ... or that a proposed accommodation will impose an undue hardship upon
the employer." *Id.* By contrast, the indirect method adapts the *McDonnell Douglas Corp. v.
Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting framework. Under
that framework, a plaintiff must first establish a *prima facie* case of discrimination by showing
that (1) he or she is disabled, (2) he or she is otherwise qualified for the position, with or without
reasonable accommodation, (3) he or she suffered an adverse employment decision, (4) the
employer knew or had reason to know of the plaintiff's disability, and (5) the position remained
open while the employer sought other applicants or the disabled individual was replaced.
*Ferrari,* 826 F.3d at 891-892. *See also Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir.
2011). Once the plaintiff establishes a *prima facie* case under the indirect method, the burden
shifts to the defendant to "offer a legitimate explanation for its action." *Ferrari,* 826 F.3d at 892.
If the defendant does so, the burden then shifts back to the plaintiff, who "must introduce
evidence showing that the proffered explanation is pretextual." *Id.*

dismissed because the sole basis of these claims is that Defendants allegedly "scrutinized the time records of Mishak" but did not look at the time records of other employees. Defendants assert "as a matter of law, an employer's actions in investigating the conduct of an employee does not, without more, rise to the level of an adverse employment action that will support a claim for disparate treatment." (Doc. No. 16 at 12.)

Mishak argues Defendants' motion should be denied because "Defendants rely upon the erroneous argument" the only adverse employment action supporting these claims is that Mishak's "time records were more heavily scrutinized than his coworkers." (Doc. No. 23 at 10.) To the contrary, Mishak asserts he expressly incorporated his entire statement of facts into Counts Seven and Eight, which "highlight many adverse employment actions" including: (1) the increased scrutiny of his time records; (2) the more stringent enforcement against Mishak of the policy regarding representation of "outside jurisdictions;" and (3) Mishak's termination for working for different municipalities despite the fact other City of Elyria Law Department employees similarly worked for other municipalities.

The Court finds Mishak has sufficiently pled claims for disparate treatment disability discrimination under the ADA and OCRA, including that he suffered an "adverse employment action" because of his disability. The Sixth Circuit has explained an "adverse employment action" is one that creates a "materially adverse change in the terms or conditions of employment." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). *See also Hurtt v. International Services,* Inc., 627 Fed. Appx. 414, 429 (6th Cir. Sept. 14, 2015); *Sessin*, 187 F.Supp.3d at 875. A materially adverse change includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of

benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Sessin*, 187 F.Supp.3d at 875.

Here, Counts Seven and Eight of the First Amended Complaint allege that, at all times relevant herein, Mishak (1) was a disabled individual as defined in 42 U.S.C. § 1201 *et seq*. due to his ADHD; (2) "had a history of said disability," and (3) "was regarded as such by his employer." (Doc. No. 13 at ¶¶ 97, 106.) The Complaint then alleges Defendants subjected Mishak to disparate treatment "versus other similarly-situated employees without disabilities." (*Id*. at ¶¶ 98, 107.) While the specific paragraphs under Counts Seven and Eight make particular reference to the alleged increased scrutiny of Mishak's time records as compared to other similarly situated Elyria City Prosecutors, Mishak correctly notes both Counts expressly "incorporate[] and restate[] each of the above paragraphs [of the First Amended Complaint] as if fully set forth herein." (*Id*. at ¶¶ 96, 105.) Previous paragraphs in the First Amended Complaint allege several adverse employment actions allegedly taken against Mishak as a result of his ADHD.

Specifically, earlier in the First Amended Complaint, Mishak alleges he was "placed under scrutiny unlike other staff attorneys" and subjected to "harshly criticizing behavior directly related to Mishak's ADHD." (*Id*. at ¶ 15.) The Amended Complaint asserts that, in December 2013, Defendant Serazin "demoted Mishak from Chief Prosecutor to Prosecutor, reduced his pay, significantly modified Mishak's job responsibilities, and removed Mishak from his assigned courtroom." (*Id*. at ¶ 17.) Mishak claims Defendant Serazin later circulated a policy regarding representation of "outside jurisdictions," "which required Mishak to take personal or vacation time for work done for the Village of Grafton, depending on undelineated

17

circumstances." (*Id.* at ¶ 19.)  The Amended Complaint alleges that, in July 2016, Defendant Serazin accused Mishak of "double dipping" due to his representation of the Village of Grafton and placed him on paid suspension with "billing to be reviewed." (*Id.* at ¶¶ 22-22.)  Mishak was thereafter terminated on August 2 or 3, 2016. (*Id.* at ¶¶ 24, 131.)  The Court finds these allegations, read as a whole, sufficiently plead that Mishak suffered an "adverse employment action" because of his disability for purposes of his disparate treatment disability discrimination claims.

In their Reply Brief, Defendants assert these claims should nonetheless be dismissed because Mishak fails to allege any other similarly situated individuals "were engaging in the same double-billing conduct" as Mishak, but were not punished. (Doc. No. 25 at 7-8.)  This argument is without merit.  As Defendants are well aware, Mishak alleges he did not engage in "double billing conduct," stating such accusations are "completely and wholly false and/or made with reckless disregard for the truth." (*Id.* at ¶ 27.)

Accordingly, and for all the reasons set forth above, Defendants' Motion for Judgment on the Pleadings with respect to Counts Seven and Eight is denied.

### C.    Invasion of Privacy– False Light

Lastly, Defendants move for judgment on the pleadings with respect to Mishak's state law claim for false light invasion of privacy.  In Count Two of the First Amended Complaint, Mishak alleges as follows:

52. Serazin purposely summoned the press to his office and purposely provided Roberson with the suspension letter and termination letter, both drafted by Serazin, containing many false and defamatory statements about Mishak, thereby giving great publicity to these statements with their subsequent publication in the Article on the front page of the Chronicle Telegram newspaper and on the internet and allowing said statements to be read, on an ongoing basis, by a large number of

people.

53. Serazin's statements placed Mishak before the public in a false light,

54. Serazin's statements are highly offensive to a reasonable person; and

55. Serazin was at fault and knew or was reckless to the falsehood of the statements.

56. Serazin's conduct in publishing the aforementioned false statements was knowing, malicious, willful and wanton and/or showed a reckless disregard for Mishak, which has caused and continues to cause Mishak to suffer substantial economic and non-economic damages, permanent harm to his professional and personal reputation, and severe mental anguish and emotional distress.

(Doc. No. 13 at ¶¶ 52-56.)

The Ohio Supreme Court first recognized the tort of false light invasion of privacy in

*Welling v. Weinfeld*, 113 Ohio St.3d 464, 472, 866 N.E.2d 1051 (2007). Adopting Section

652(E) of the Restatement of the Law 2d, Torts, the Court defined this claim as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Welling*, 113 Ohio St.3d at Syllabus.

The Court recognized "[t]he requirements imposed by the Restatement make a false-light

claim difficult to prove." *Id.* at 1057. First, the statement must be untrue. *Id. See also Miller v.*

*Davis*, 653 Fed. Appx. 448, 461 (6th Cir. June 24, 2016) ("Importantly, truth is a defense to an

action for false-light invasion of privacy."). Second, the information must be "publicized,"

which is different from "published."[5] *Id*. Third, the misrepresentation made must be serious

enough to be highly offensive to a reasonable person, as follows:

> [The rule stated in this Section] applies only when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity.... The plaintiff's privacy is not invaded  when the unimportant false statements are made, even when they are made deliberately.  It is only when there is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position, that there is a cause of action for invasion of privacy.

*Id*. at 1057-1058 (quoting Restatement of the Law 2d, Torts, Section 652E, Comment c).

Further, the plaintiff bears the burden of proving by clear and convincing evidence that the

defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized

matter and the false light in which the other would be placed," in cases of both private and public

figures.[6]  *Id*. at 1058 (quoting Restatement of the Law 2d, Torts, Section 652E(b)).  *See also*

*Patrick v. Cleveland Scene Publishing*, 582 F.Supp.2d 939, 954-955 (N.D. Ohio 2008).

Defendants claim they are entitled to judgment in their favor because the documents

---

[5] The Court explained: "'Publicity,' as it is used in this Section, differs from 'publication,' as that term is used * * *in connection with liability for defamation. 'Publication,' in that sense, is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication *472 that reaches, or is sure to reach, the public." Restatement of the Law 2d, Torts, Section 652D, Comment a." *Id.*

[6] The Ohio Supreme Court acknowledged a certain degree of overlap between defamation and the tort of false-light but found "[w]ithout false light, the right to privacy is not whole, as it is not fully protected by defamation laws."  *Welling*, 113 Ohio St.3d at 1057.  The Court noted a plaintiff may pursue both claims in the alternative but may only recover for a single instance of publicity. *Id.* at 1058.

which form the basis of this claim (i.e., Mishak's suspension and termination letters) are public records under Ohio Rev. Code § 149.43. (Doc. No. 16 at 5-7.) Specifically, Defendants argue "when, as here, the gist of the claim is that defendant Serazin 'purposely provided Roberson with the Suspension Letter and Termination Letter,' which were subsequently published, and when those records are 'public records' as a matter of law, there is no 'secret' information disclosed; there is no privacy interest breached, because, by definition, those documents are 'public;' hence, a 'false light' claim fails as a matter of law." (*Id*. at 6.)

Mishak argues "Defendant's publication in a public record of erroneous facts aimed at defaming Plaintiff's character was in and of itself a violation of his privacy rights and actionable under this claim." (Doc. No. 23 at 3.) He further asserts "even if Defendant Serazin's first publication of these false statements in a public record did not constitute a false-light tort, liability for that tort can still attach when disclosing public records not normally viewed by the public, as Serazin did when disclosing these facts to the media." (*Id*. at 7.) In this regard, Mishak maintains his personnel file "is not normally viewed by the public unless brought to publicity, as Defendant Serazin did by disclosing it to the media." (*Id*.) Finally, Mishak argues this claim also includes Defendant Serazin's disclosure to the press that Mishak was under investigation by the Lorain County Bar Association for an alleged violation of the Ohio Rules of Professional Conduct while that investigation was confidential. (*Id*. at 8.)

Upon review, the Court finds Defendants have failed to demonstrate they are entitled to judgment in their favor with respect to Mishak's false light invasion of privacy claim. The Ohio cases cited by Defendants do not involve situations, such as that alleged herein, where a defendant takes affirmative steps to bring allegedly false and "highly offensive" information

21

(Doc. No. 13 at ¶¶ 52, 53) forming the basis of a plaintiff's false light claim to the attention of the press.  *See e.g., Lentz v. City of Cleveland*, 2006 WL 1489379 at * 4 (N.D. Ohio May 22, 2006) (dismissing invasion of privacy claim where plaintiff "himself made this information public" by placing the information at issue on the record at two separate public hearings); *Mattessich v. Weathersfield Township*, 2015 WL 13134819 at * 3 (Trumbull Cty C.P. June 1, 2015) (dismissing false light invasion of privacy claim where "there was no evidence of falsity of any statement, and any publicity was the result of Plaintiff's decision to have a public hearing or was the result of a mandatory release of records from a public records request.")

At this early stage in the litigation, the Court cannot say Mishak's false light invasion of privacy claims fail as a matter of law.  Defendants' motion for judgment on the pleadings with respect to Count Two is, therefore, denied.

## V. Conclusion

For all of the foregoing reasons, Defendant's "Motion for Judgment on the Pleadings" (Doc. No. 16) is GRANTED IN PART and DENIED IN PART, as follows:

- With respect to Count Two (Invasion of Privacy- False Light), Defendants' motion is denied.

- With respect to Count Three (Malicious Prosecution), Defendants' motion is granted to the extent this Count is dismissed without prejudice.

- With respect to Count Four (Abuse of Process), Defendants' motion is granted.

- With respect to Counts Seven and Eight (Disparate Treatment under the ADA and OCRA), Defendants' motion is denied.

- With respect to Count Twelve (Loss of Employment), Defendants' motion is granted.

**IT IS SO ORDERED.**

Date: February 7, 2018                     s/ *Jonathan D. Greenberg*
                                           Jonathan D. Greenberg
                                           U.S. Magistrate Judge