UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW A. MISHAK, | ) | CASE NO.:  1:17CV01543 |
| | ) | |
| Plaintiff, | ) | JUDGE:  JONATHAN D. GREENBERG |
| | ) | |
| vs. | ) | **DEFENDANTS MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| SCOTT F. SERAZIN, et al., | ) | |
| | ) | |
| Defendants | ) | |

Now come Defendants, Scott F. Serazin and City of Elyria, by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, move this Honorable Court for an order granting them summary judgment and dismissing with prejudice all of Plaintiff's claims against them.  This Motion is supported by the attached Brief in Support, exhibits and affidavits all of which are attached hereto and fully incorporated herein.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

s/John D. Pinzone
JAMES A. CLIMER (0001532)
JOHN D. PINZONE (0075279)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:   jclimer@mrrlaw.com
             jpinzone@mrrlaw.com

Counsel for Defendants City of Elyria and Scott F. Serazin, in his official capacity

1

*/s/Stephen P. Bond*
STEPHEN P. BOND (0000344)
Brouse McDowell
600 Superior Ave., Ste. 1600
Cleveland, OH 44035
(440) 830-6810
Email:  sbond@brouse.com

Counsel for Defendant Scott F. Serazin,
Individually

# TABLE OF CONTENTS

BRIEF IN SUPPORT ................................................................................................1

I. INTRODUCTION .............................................................................................1

II. STATEMENT OF THE CASE...........................................................................2

    A. Facts ..........................................................................................................2

III. SUMMARY JUDGMENT STANDARD ...........................................................8

IV. LEGAL ANALYSIS...........................................................................................8

    A. The state law defamation claims fail as a matter of law. .........................8

        1. The applicable legal standards for defamation. ........................... 8

        2. Absolute privilege applies to any statements made to the Lorain County Prosecutor and Ohio Auditor. ....................................... 10

        3. All alleged defamatory statements are subject to a qualified privilege. ....................................................................................... 11

        4. Plaintiff is a public official and cannot establish actual malice.............. 12

    B. Plaintiff's false light-invasion of privacy claim fails as a matter of law.................12

        1. The applicable legal standards for false light-privacy claims.................. 13

        2. Certain alleged false matters were not publicized. .................... 13

        3. The false light claims fail because the alleged matter publicized in the article was not highly offensive and did not portray Plaintiff in a false light............................................................................ 14

        4. The false light claims fail for the same reasons as the defamation claims. ......................................................................................... 14

    C. Plaintiff's federal and state law malicious prosecution claims fail as a matter of law. ..........................................................................................15

        1. The federal malicious prosecution claim is not viable............................ 15

        2. Mr. Serazin is entitled to qualified immunity as to the federal malicious prosecution claim. ..................................................... 17

        3. A *Monell* claim against Elyria fails as a matter of law. ........................... 18

i

4.      Plaintiff's state law malicious prosecution claim fails as a matter of law. ........................................................................................... 19

D.      All of Plaintiff's state law claims fail based upon R.C. Chapter 2744 immunity. ...........................................................................................20

      1.      Elyria is entitled to R.C. Chapter 2744 immunity. ................................. 20

      All of Plaintiff's state law claims are predicated upon Mr. Serazin's communications with individuals or entities following Plaintiff's employment termination.  Accordingly, with respect to all state law claims, Elyria is entitled to R.C. Chapter 2744 immunity. ...................... 21

      2.      Mr. Serazin is entitled to R.C. Chapter 2744 immunity. ......................... 22

E.      Plaintiff's federal and state law claims for disability discrimination fail as a matter of law. ...........................................................................................24

      1.      The discrimination claims against Mr. Serazin fail because he is not an "employer". .......................................................................... 24

      2.      The disability discrimination claims against Elyria fail on the merits. .................................................................................................. 25

F.      Plaintiff's federal and state retaliation claims fail as a matter of law. .................28

      1.      Mr. Serazin cannot be individually liable for retaliation under the federal claims. .......................................................................... 28

      2.      The retaliation claims fail on the merits. .................................................. 28

V.      CONCLUSION ........................................................................................30

CERTIFICATE OF SERVICE ........................................................................................32

# TABLE OF AUTHORITIES

## Cases

*A&B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 8 .................................................................................. 9, 12

*Ahlers v. Schebil* (6th Cir.1999), 188 F.3d 365, 372 .................................................... 21

*Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 601 .................................................................................................................... 8

*Albright v. Oliver,* 510 U.S. 266 (1994) ...................................................................... 18

*Anderson v. Massillion,* 134 Ohio St. 3d. 380, 2012-Ohio-5711.................................... 26

*Arrington-Bey v. Bedford Heights,* 858 F.3d 988, (6th Cir.2017) ................................ 21

*Ash v. Ash* (1995)*, 72 Ohio St.3d 520, 522* .............................................................. 23

*Beck v. Ohio* (1964), 379 U.S. 89, 91 ........................................................................ 23

*Brown v. VHS of Mich. Inc.*, 545 Fed. Appx. 368, 374 (2013)...................................... 34

*Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990) .................... 33

*Canton v. Harris*, 489 U.S. 390-391 ........................................................................... 21

*Cash v. Siegel-Robert, Inc.*, 548 Fed. Appx. 330, 335.................................................. 30

*Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, (2001) ............................... 33, 34, 35

*Coleman v. Beachwood*, 8th Dist. No. 92399, 2009-Ohio-5560 .................................... 25

*Coleman v. Cleveland School Dist. Bd. of Edn.,* 8th Dist. Nos. 84274 and 84505, 2004-Ohio-5854 ............................................................................................................ 25

*Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 573, 697 N.E.2d 204, 206–207 ................................................................................................................ 28

*Cook v. Cincinnati*, 103 Ohio App.3d 80, 90 (1995)...................................................... 26

*Darrah v. City of Oak Park,* 255 F.3d 301, 308 (6th Cir.2001) .................................... 17

*Davis v. Cleveland*, 8th Dist. No. 83665, 2004-Ohio-6621 ......................................... 10

*Dickinson v. Spieldenner*, 6th Dist. No. L–16–1041, 2017-Ohio-667.............................. 14

*Doe v. Dayton City School Dist. Bd. of Educ.* (1999), 137 Ohio App.3d 166, 169...................... 24

*Duper v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116 ........................................ 9

*E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753 (6th Cir.2015)............................................ 30

*Frantz v. Village of Bradford,* 245 F.3d 869, 876 (6th Cir.2001)................................... 17

*Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir.1998) ...................... 30

*Garrison v. Bobbitt* (1999)*, 134 Ohio App.3d 373, 384 (Second Dist.).......................... 26

*Gilbert v. WNIR 100 FM* (2001), 142 Ohio App.3d 725, 740 ................................ 10, 12

*Gregory v. City of Louisville*, 444 F.3d 725, at fn. 10 (6th Cir.2006) ........................... 17

*Griffits v. Newburgh Heights*, Eighth Dist. No. 91428, 2009-Ohio-493 ......................... 25

*Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 511 (6th Cir.2012)...................... 20

*Haller v. Borror* (1995), 10th Dist. No. 95APE01-16, 1995 WL 479424.................... 21, 22

*Hammon v. DHL Airways, Inc.* 165 F.3d 441, 449 (6th Cir.1999)........................... 29, 30

*Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir.2008)............................................... 19

*Hauser v. Dayton Police Dept.*, 140 Ohio St.3d 268, 2014-Ohio-3636 ......................... 28

*Hecht v. Levin* (1993), 66 Ohio St.3d 458 .................................................................. 9

*Howard v. Miami Twp. Fire Div.* (2008), 119 Ohio St. 3d. 1, 4.................................... 23

*Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 114........................................................ 10, 13

*Johnson v. Ward*, 43 Fed. Appx. 779, 782 (6th Cir. 2002)........................................... 17

*Lee v. Upper Arlington*, 10th Dist. No. 03AP-132, 2003-Ohio-7157.......................... 9, 11, 22

iii

*LeFever v. Ferguson*, 956 F.Supp.2d 819, 840-841 (6th Cir.2013) .......................... 22

*Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir.2012) ............ 29

*Lograsso v. Frey*, 8th Dist. No. 100104, 2014-Ohio-2054 ..................................... 9, 11

*Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ............................................... 20

*M.B. v. Elyria City Bd. of Educ.*, 9th App. Dist., 05CA008831, 2006-Ohio-4533 ....................... 26

*M.J. DiCorpo, Inc. v. Sweeney* (1994), 69 Ohio St.3d 497, 505 ......................... 9, 11, 21

*Mayes v. Columbus* (1995), 105 Ohio App.3d 728 ............................................ 26

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973) ................................ 29, 33

*Mitchell v. Chapman,* 343 F.3d 811, 828 (6th Cir.2003) .................................... 32

*Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978) ........................................ 20

*New York Times v. Sullivan*, 376 U.S. 254, (1964) ........................................... 10

*Nilles v. Givaudan Flavors Corp.*, 521 Fed.Appx. 364, 368 (6th Cir. 2013) .............. 30

*Noonan v. Cty. of Oakland*, 683 Fed. Appx. 455 (6th Cir.2007) ......................... 17, 18

*O'Toole v. Denihan* (2008), 118 Ohio St.3d 374 ............................................ 27

*Parsons v. Auto Club Group*, 565 Fed.Appx. 446 (6th Cir.2014) ......................... 30

*Peet v. Detroit*, 502 F.3d 557, 566 (6th Cir.2007) ........................................... 20

*Pierce v. Woyma* (1997)*,* Eighth Dist. No. 97545, 2012-Ohio-3947 ..................... 26

*Pray v. Sandusky*, 49 F.3d 1154, 1157 (6th Cir.1995) ....................................... 19

*Reasbeck v. Wheeling Pittsburgh Steel Corp.*, 230 F.3d 1359, (6th Cir.2000) ............ 22

*Reynolds v. Extendicare Health Servs. Inc.*, 257 Fed.Appx 914, 920-921 (6th Cir. 2007) ......... 33

*Reynolds v. Federal Exp. Corp.*, 544 Fed.Appx. 611, 615 (6th Cir. 2013) ............. 33, 35

*Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966) .............................................. 11, 13

*Saylor v. Bd. of Educ. of Harlan Cty.,* 118 F.3d 507, 515–16 (6th Cir.1997) .............. 19

*Scheffler v. Lee*, No. 3:14-CV-00373, 2017 WL 6396139, *7 (W.D.Ky.) ................... 17

*Scott v. Clay Cnty., Tennessee*, 205 F.3d 867, 873 n.8 (6th Cir.2000) ..................... 16

*Scott v. News-Herald* (1986), 25 Ohio St.3d 243, 248 ................................... 10, 12

*Shaver v. Wolske & Blue* (2000), 138 Ohio App. 3d 653 ................................... 28

*Smith v. Dept. of Pub. Safety*, 10th Dist. No. 12AP-1073, 2013-Ohio-4210 ............... 33

*Spurlock v. Satterfield,* 167 F.3d 995, 1006 n. 19 (6th Cir.1999) .......................... 17

*St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993) .............................. 29

*Stanton v. Sims*, 571 U.S. 3, 5 (2013) ....................................................... 19

*State v. Heston* (1972), 29 Ohio St.2d 152, 155-156 ........................................ 23

*Sykes v. Anderson*, 625 F.3d 294, 308-309 .................................................. 18

*Taylor v. Streicher*, 465 Fed.Appx. 414, 420 (6th Cir.2012) ............................... 22

*Temethy v. Huntington Bancshares, Inc.*, 8th Dist. No. 83291, 2004-Ohio-1253 .............. 9

*Thacker v. Columbus,* 328 F.3d 244, 260-261 (6th Cir. 2003) ............................. 21

*Trapp v. Kimpel*, No. 3:13-cv-18, 2013 WL 4510570, *6 (S.D.Ohio) ....................... 17

*Walsh v. Village of Mayfield*, Eleventh Dist. No. 92309, 2009-Ohio-2377 ................. 23

*Waters v. Ohio State Univ.*, Ct. of Cl. No. 2015–00457, 2016–Ohio–5260 ................ 14

*Wathen v. Gen. Elec. Co.,* 115 F.3d 400, 406 (6th Cir.1997) ............................... 28

*Welling v. Weinfeld* (2007), 113 Ohio St.3d 464, 2007-Ohio-245 .................. 14, 15, 25

*White v. Pauly,* 137 S.Ct. 548, 551, (2017) .................................................. 19

*Willoughby v. Allstate Ins. Co.*, 104 Fed.Appx 528, 530 (6th Cir. 2004) ................... 34

*Xiques v. Knight, 25 Fed.Appx. 251,* (6th Cir.2001) ..................................... 10, 12

*Yarberry v. Gregg Appliances, Inc.*, 625 Fed.Appx. 729 (6th Cir.2015) .................... 30

*Ziegler v. Mahoning Cty. Sheriff's Dept.* (2000), 137 Ohio App.3d 831, 836 .............. 25

iv

*Zumwalde v. Madeira & Indian Hill Joint Fire* Dist., 128 Ohio St.3d 492, 2011–Ohio–
    1603 ...................................................................................................................... 25

**BRIEF IN SUPPORT**

## I.    INTRODUCTION

Plaintiff Matthew Mishak's claims arise from his employment as a City of Elyria Prosecutor and his termination from such employment.  Each Count of the Seconded Amended Complaint is asserted against Defendants City of Elyria and Scott F. Serazin, in his individual and official capacities.  Counts I and II of the Complaint attempt to assert state law claims of Defamation and False Light-Invasion of Privacy.  Counts III and IV attempt to assert Malicious Prosecution claims under federal and state law.  Counts V and VI of the Complaint attempt to assert claims for failure to accommodate a disability under the ADA and R.C. 4112.02.  Counts VII and VIII of the Complaint attempt to assert disparate treatment claims under the ADA and R.C. 4112.02.  Finally, Counts IX, X and XI attempt to assert Retaliation claims under the ADA, R.C. 4112.02, and the Family Medical Leave Act ("FMLA").

Defendants are entitled to summary judgment as a matter of law on all claims based upon the following:

- The defamation and false light-invasion of privacy claims fail as a matter of law based upon privilege and there is no clear and convincing evidence of actual malice.

- Plaintiff's claims for malicious prosecution fail as a matter of law because of privilege and the claims fail on the merits.  Moreover, Mr. Serazin is entitled to qualified immunity on the federal claim.  Elyria is also entitled to summary judgment as a matter of law on the *Monell* claim.

- Elyria and Mr. Serazin are entitled to R.C. 2744 immunity on all state law claims.

- The state and federal law claims for disability discrimination fail as a matter of law because Plaintiff cannot establish a prima facie case of disability discrimination or that there was intentional disability discrimination.  Also, Mr. Serazin is not an "employer" under the ADA and R.C. 4112.02 and, therefore, cannot be subject to liability under either statute.

- The state and federal retaliation claims fail as a matter of law because Plaintiff cannot establish a prima facie case of retaliation or that there was intent to retaliate.

1

II.    STATEMENT OF THE CASE

A.    <u>Facts</u>

Plaintiff and Mr. Serazin met in May 2005 while both were employed at the Lorain County Prosecutor's Office.  (Plaintiff Depo., portions attached as Ex. A, at p. 14-15.)  Plaintiff and Mr. Serazin became friends while at the Lorain County Prosecutor's Office and often discussed work, family, and politics.  (Id. at 17.)

In 2011, Mr. Serazin ran for the Elyria Law Director position, and Plaintiff assisted with his campaign efforts.  (S. Serazin Depo., portions attached as Ex. B, at pp. 31-32.)  Mr. Serazin won the election and became the Elyria Law Director in January 2012.  (Plaintiff Depo., Ex. A, at p. 30.) Shortly thereafter, Mr. Serazin appointed Plaintiff to the position of Elyria's Chief Assistant Prosecutor.  (Id.)  According to Plaintiff, he spoke with Mr. Serazin about his ADHD at some time prior to Mr. Serazin appointing him Chief Assistant Prosecutor.  (Id. at pp. 18-19.)

Plaintiff testified that when he accepted the appointment as Chief Assistant Prosecutor, he had been a prosecutor and attorney for approximately six years and was aware of the position's demands.  (Id. at 35-37.)  Specifically, Plaintiff understood that the position required autonomy, independent decision making, good judgment, timeliness and a degree of discretion.  (Id.)  It was also Plaintiff's understanding that a full-time Elyria Prosecutor was required to work at least forty hours per week.  (Id. at 38)

In January 2012 – in addition to starting his new position as Chief Assistant Prosecutor – Plaintiff began his side business, Drone Works, LLC.  (Id. at 9-10.)  Drone Works, LLC, uses drones to provide aerial photography and videography, gel rectified mapping, and façade inspections.  (Id. at 9-10)  Plaintiff also created Drone Guys, LLC, which he described as a club for commercial drone operators.  (Id.)

2

Plaintiff was initially performing his job duties as Elyria's Chief Assistant Prosecutor adequately. (Id. at 43.) However, beginning in July 2013, there were a string of workplace transgressions by Plaintiff that culminated in his termination for inappropriate use of Elyria time. (Id. at 158-159, *with attached Depo. Ex. 13, July 22, 2016 letter.*)

First, in July 2013, Plaintiff mishandled a criminal case by engaging in an ex-parte communication with a Judge in an attempt to secure a warrant that two separate Judges believed could not be issued due to staleness. (Id.) As a result of Plaintiff's inappropriate conduct, both Judges had to recuse themselves and the criminal defendant avoided a full conviction. (Id.) Due to his mishandling of the criminal case, Plaintiff was demoted to Elyria Prosecutor. (Id.)

From 2014-2015, Plaintiff's conduct made clear that he was placing his drone business interests ahead of his duties as an Elyria Prosecutor. (Id.) Plaintiff made multiple requests for Elyria to pay for his attendance at drone seminars that did not address any relevant issues to Plaintiff's job duties as an Elyria Prosecutor. (Id.) Plaintiff was also reprimanded for scheduling issues caused by scheduling days off to pursue drone business interests and then, without appropriate notice, coming into work. (Id.)

In February 2015, in an effort to re-engage and motivate Plaintiff, Mr. Serazin assigned Plaintiff to handle a civil matter. (Id.) Mr. Serazin instructed Plaintiff to respond quickly to a civil motion for contempt asserted against the Elyria Police Department. (Id.) Despite this instruction, Plaintiff failed to even file a notice of appearance in the matter. (Id.) In fact, the Judge assigned to the civil contempt proceeding telephoned Mr. Serazin directly to inform him that no action had been taken in response to the motion for contempt. (Id.) Mr. Serazin wrote a reprimand letter addressing the mishandling of the civil matter and Plaintiff's prior transgressions. (Id.)

Plaintiff also improperly issued an erroneous, self-aggrandizing "legal" opinion to a local school board which was unclear as to whether it was an official opinion of the Elyria Law Department. (Id.) Despite a clear conflict of interest, Plaintiff's "legal" opinion erroneously concluded that his prosecutor title did not preclude him from filling a vacant seat on the school board. (Id.) Mr. Serazin had to inform Plaintiff that his "legal" opinion was flawed based upon Ohio Attorney General Opinions and that Plaintiff's position as prosecutor did not provide him with the authority to issue what was termed a "legal" opinion by the Elyria Law Department. (Id.) These serious transgressions again required Mr. Serazin to issue a March 2, 2015 memo reprimanding Plaintiff. (Id.)

In November 2015, Plaintiff mishandled an assigned income tax case by signing a complaint for additional criminal charges against the defendant and then attempting to file the complaint on the day of the hearing. (Id.) Mr. Serazin stopped Plaintiff from filing the new complaint because doing so violated Elyria's policy against a prosecutor signing and filing a complaint for criminal charges. (Id.)

In March 2016, during a criminal matter, Plaintiff improperly called Elyria's monitoring technology provider as a witness to establish that the defendant out on bond had found a way to bypass the monitoring technology's ability to accurately locate them. (Id.) Not only did this misguided, long-shot argument call into question the technology used by the Elyria Prosecutor's Office, but it also required the Judge to recuse herself as the Judge used the same technology for monitoring other individuals out on bond. (Id.)

Plaintiff's most serious workplace transgressions involved unethical double billing. A May 1, 2014 written policy required Elyria Prosecutors to take personal or vacation time when providing substantive legal representation to a separate governmental entity. (Id. at 222-223.) An

4

administrative assistant, via a verbal complaint, provided information that Plaintiff was spending an inordinate amount of time on representing the Village of Grafton during Elyria work hours.  (Id. at 238-239.)  Mr. Serazin looked into the complaint and discovered that Plaintiff was reviewing evidence from Grafton cases, speaking with Grafton witnesses, and preparing for Grafton trials while on Elyria time.  (Id.; C. Darmstadt Depo., portions attached as Ex. C, at 14-15.)

Mr. Serazin further investigated the alleged inappropriate billing by Plaintiff.  (A. Deery Depo., portions attached as Ex. D, at pp. 135-139.)  First, Mr. Serazin obtained Plaintiff's Grafton billing records via a public records request.  (Id.)  He then had his Chief of Staff, Amanda Deery, review Plaintiff's billing records against Plaintiff's Elyria timesheets.  (Id.)  In addition, Mrs. Deery reviewed Elyria and Grafton Court dockets for cases handled by Plaintiff in both Courts.   (Id.)  After conducting this investigation, Mrs. Deery informed Mr. Serazin that it appeared Plaintiff was working for Elyria while simultaneously billing Grafton for time, in contravention of Elyria's express policy.  (Id.)  Notwithstanding all the explanations he otherwise offers, Plaintiff conceded that there is at least one occasion where he billed for Grafton court time but did not take time off from Elyria.  Specifically, Plaintiff conceded that he attended a status hearing for a Grafton matter and did not take personal time as required by Elyria policy.  (Plaintiff Depo., Ex. A, at 239-241.)

As a result of the foregoing, Mr. Serazin wrote a July 22, 2016 letter to Plaintiff which was initially intended to be an employment termination letter.  (Serazin Depo., Ex. B, at pp. 158-159, *with Depo. Ex. 13, July 22, 2016 Letter*.)  Mr. Serazin called Plaintiff to his office to speak with him and provide him with the letter.  (Plaintiff Depo., Ex. A, at p. 154.)  The unethical billing and potential severe consequences of the unethical billing were discussed during the meeting.  (Id.)  Plaintiff claims that during the meeting he raised his ADHD as a potential reason for some of his workplace transgressions.  (Id. at 159-160.)

Plaintiff testified that he brought up his ADHD during this meeting because he could not recall previously informing Mr. Serazin that his ADHD was negatively impacting his job performance; nor did he recall previously informing Mr. Serazin that he needed an accommodation for his ADHD.  (Id. at 159-160.)  Mr. Serazin testified that the July 22, 2016 meeting was the first time Plaintiff indicated that "a mental illness" or ADHD was having a negative impact on Plaintiff's ability to perform his job duties.  (Serazin Depo., Ex. B, at pp. 199-200.)  At the conclusion of the meeting, Mr. Serazin stated that the termination was being changed to a suspension and they agreed to schedule a follow-up meeting for the next week so Plaintiff could have his attorney present.  (Id. at 199-200; Plaintiff Depo., Ex. A, at pp. 165-166.)

Mr. Serazin attempted to schedule the follow-up meeting with Plaintiff's attorney, but was unsuccessful.  (Serazin Depo., Ex. B, at p. 202.)  He did receive a letter dated July 28, 2016 from Plaintiff's doctor regarding Plaintiff's ADHD.  (Id.)  The July 28, 2016 letter stated in part:

> "I am requesting hereby that reasonable accommodations be made for Atty. Mishak in his current position.  This would include, among others: frequent two-way communication with an understanding that repetition and review of the needs and demands of a given assigned task will often be necessary; the setting of mutually acceptable deadlines, including interim deadlines; an allowance to take breaks from sedentary work as necessary to clear and focus the mind; and the expectation that more time may be required by this employee for a given task than might be expected for another otherwise similarly qualified employee."  (Id. at 204, *with attached Depo. Ex. 15, July 28, 2016 Doctor Letter.*)

Mr. Serazin determined that Plaintiff's unethical double billing could not be attributed to Plaintiff's ADHD.  (Id.)  Mr. Serazin then sent Plaintiff an employment termination letter on August 2, 2016.  (Id. at 206, *with attached Depo. Ex. 16, August 2, 2016 Termination Letter.*)

On August 4, 2016, Mr. Serazin spoke with local news reporter, Lisa Roberson via telephone.  (Id. at 206.)  As was his practice, Mr. Serazin informed Ms. Roberson that Plaintiff's employment as Elyria Prosecutor had been terminated.  (Id. at 207-211)  He provided Ms.

Roberson with the July 22, 2016 termination letter with its attachments.  (Id.)  Ms. Roberson then

contacted Plaintiff, to discuss his employment termination.  (Plaintiff Depo., Ex. A, at p. 172.)

According to Plaintiff, he had not received the August 2, 2016 termination letter when Ms.

Roberson contacted him.  (Id.)

Ms. Roberson considered Plaintiff's separation from employment a matter of legitimate

public interest and Mr. Serazin's information provided to her as nothing more than the normal

release of public information by a public official.  (L. Roberson Depo., portions attached as Ex. E,

at pp. 26-27.)  Ms. Roberson wrote an August 5, 2016 article regarding Plaintiff's employment

termination for a local newspaper.  (Id. at p. 18, *attached Depo. Ex. C, News Article*.)

Following Plaintiff's employment termination, Mr. Serazin referred Plaintiff's misuse of

Elyria time to the Lorain County Prosecutor's Office.  (Serazin Depo., Ex. B, at pp. 234-235.)  The

prosecutor's office declined to investigate and, instead, sent the matter to the Lorain County

Sheriff's Department to conduct an investigation.  (Id.)  The Sheriff's Department declined to

conduct an investigation because a relative of Plaintiff worked at the department.  (Id.)  The Ohio

Auditor's Office was then engaged by the prosecutor's office to conduct an investigation.  (Id.)

After conducting an investigation, the Auditor's Office chose not to pursue the matter, but stated:

> "Our examination identified 5 instances out of 414 Village of Grafton case log
> items billed in which Mr. Mishak was required to request and use leave time with
> the City of Elyria in order to conduct a Village of Grafton case.  Mr. Mishak did
> not use leave for 3 out of the 5 billed items for a total of 9 hours."  (Id.)

Plaintiff sought unemployment compensation following his termination.  (Plaintiff Depo.,

Ex. A. at 152, 157, 186, 194-195, *attached Depo. Ex. X, Court Order Denying Unemployment*.)

During the unemployment compensation proceedings, a hearing was conducted.  (Id.)  Testimony

from multiple witnesses was presented and numerous document exhibits were produced.  (Id.)

Based upon the evidence, the unemployment compensation hearing officer determined that

Plaintiff had violated Elyria policy by billing on Grafton matters while contemporaneously working for Elyria and, therefore, denied the claim for unemployment compensation.  (Id.) Plaintiff appealed and the Court of Common Pleas affirmed the denial stating, in part, that there was competent credible evidence to support the hearing officer's findings.  (Id.)

## III.     SUMMARY JUDGMENT STANDARD

The well-established summary judgment standard applies.

## IV.     LEGAL ANALYSIS

### A.     The state law defamation claims fail as a matter of law.

Plaintiff's defamation claims contend that Mr. Serazin's July 22, 2016 letter and its reference to prior employment disciplinary letters included false defamatory statements.  The defamation claims further alleges that Mr. Serazin engaged in defamation by revealing to Ms. Roberson that Plaintiff's employment was terminated for unethical billing.  Furthermore, the defamation claims contend that Mr. Serazin engaged in defamation when he reported Plaintiff's double billing to the Lorain County Prosecutor.  For the following reasons, Plaintiff's defamation claims fail as a matter of law.

### 1.     The applicable legal standards for defamation.

To prevail on a claim for defamation, the plaintiff must demonstrate that (1) a false and defamatory statement was made about another; (2) there was an unprivileged publication to a third party; (3) there was fault amounting at least to negligence on the part of the publisher; and (4) the statement is actionable irrespective of special harm or the existence of special harm caused by the publication. *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 601.  If any element of the defamation claim is not established with convincing clarity, the

defendant is entitled to summary judgment. *Temethy v. Huntington Bancshares, Inc.*, 8th Dist. No. 83291, 2004-Ohio-1253, at ¶14, citing *Duper v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116.

An absolute privilege applies to alleged defamatory statements made to a prosecutor that are related to potential criminal or illegal misconduct. *M.J. DiCorpo, Inc. v. Sweeney* (1994), 69 Ohio St.3d 497, 505. See, also, *Lee v. Upper Arlington*, 10th Dist. No. 03AP-132, 2003-Ohio-7157, at ¶19. Likewise, an absolute privilege applies to reporting a potential grievance for unethical misconduct of an attorney. *Lograsso v. Frey*, 8th Dist. No. 100104, 2014-Ohio-2054, at ¶¶20-21, citing *Hecht v. Levin* (1993), 66 Ohio St.3d 458.

In addition, a defamation claim is subject to a qualified privilege when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." *A&B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 8. A qualified privilege protects a defendant in a defamation claim "where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person ... in the performance of such duty." *Id.* Moreover, it is well established that a communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by a qualified privilege. *Davis v. Cleveland*, 8th Dist. No. 83665, 2004-Ohio-6621, at ¶43.

This qualified privilege is especially relevant when a public officer makes a communication regarding a public matter in an effort to discharge their duties. *Xiques v. Knight, 25 Fed.Appx. 251,* (6th Cir.2001). Indeed, the privilege is based, in part, on the "vital and legitimate

9

concern in the affairs of government and in the performance of governmental officials and agencies." *Gilbert v. WNIR 100 FM* (2001), 142 Ohio App.3d 725, 740.

To overcome a qualified privilege, a plaintiff must present clear and convincing evidence that a defendant acted with actual malice.  *Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 114.  To show actual malice, it must be demonstrated that the allegedly defamatory statements were published with either actual knowledge that the statements were false, or with a high degree of awareness of its probable falsity.  *Scott v. News-Herald* (1986), 25 Ohio St.3d 243, 248.

Further, in *New York Times v. Sullivan*, 376 U.S. 254, (1964), the United States Supreme Court held that the high standard of actual malice applies to actions brought by public officials against critics of their official conduct.  *Id*. at 283.  To qualify as a public official, the person "must have, or appear to have, substantial responsibility or control over public affairs, and his position must have such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees * * *."  *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966).

## 2.    Absolute privilege applies to any statements made to the Lorain County Prosecutor and Ohio Auditor.

In part, Plaintiff's defamation claims are predicated upon statements made by Mr. Serazin, to the Lorain County Prosecutor which led to an investigation by the Ohio Auditor.  Any communication between Mr. Serazin and either of these entities was limited to information regarding the potential illegal and unethical double-billing by Plaintiff.  It is well-established that these types of communications are subject to an absolute privilege.  *M.J. DiCorpo, Inc.*; *Lee*; *Lograsso*.  Thus, Plaintiff's defamation claims fail as a matter of law to the extent they are premised upon statements made to the Lorain County Prosecutor or Ohio Auditor.

3.  **All alleged defamatory statements are subject to a qualified privilege.**

The alleged defamatory statements only concern Plaintiff's public employment as a prosecutor with the City of Elyria.  Moreover the statements were made by Mr. Serazin in his capacity as a public officer and were in relation to issues of a legitimate public concern. Specifically, the alleged defamatory statements concerned Plaintiff's mishandling of criminal cases, placing his private business interests ahead of his public prosecutor duties, failing to recognize obvious conflicts of interest with his prosecutor position, violating Elyria Law Department policies, and misusing Elyria time and taxpayer money by billing for Grafton work on Elyria time.  It is without question that the communications represent matters of public interest relating to the conduct of a public prosecutor in relation to his job performance, conflicts of interest, and the misuse of public funds.  Therefore, the alleged defamatory statements are entitled to a qualified privilege and the actual malice standard applies.  *A&B-Abell*; *Xiques*; *Gilbert.*

That being said, Plaintiff cannot establish with clear and convincing evidence, that Mr. Serazin made the alleged defamatory statements with actual malice.  First, Mr. Serazin was personally involved in the disciplinary matters that were addressed in the disciplinary/suspension letters.  Moreover, Mr. Serazin thoroughly investigated the billing issues prior to making any communication.  Mr. Serazin was informed by administrative staff that Plaintiff was spending an excessive amount of time on Grafton matters while at the Elyria Law Department.  Mr. Serazin then obtained Grafton billing entries and had them compared to Elyria time sheets for selected dates.  The Grafton Court dockets were also reviewed.  The review showed that Plaintiff was working on substantive and time consuming Grafton matters while contemporaneously billing Elyria.  Importantly, after reviewing the Unemployment Compensation hearing, the Lorain County

11

Common Pleas Court found there was competent and credible evidence that Plaintiff was violating Elyria policy by billing for Grafton work while on Elyria time.

In short, there is clear and convincing evidence that Mr. Serazin's statements were *not* false, were *not* defamatory and were *not* made with actual knowledge that the statements were false or with a high degree of awareness of their probable falsity.  See *Scott*; *Jacobs*.  Accordingly, Mr. Serazin's communications are entitled to a qualified privilege and all of Plaintiff's defamation claims fail as a matter of law.

### 4.    Plaintiff is a public official and cannot establish actual malice.

The actual malice standard also applies because Plaintiff is a public official.  As an Elyria prosecutor, Plaintiff had substantial control over public affairs relating to criminal lawsuits and enforcement of Elyria laws.  In his position as an Elyria prosecutor, Plaintiff exercised a tremendous amount of discretion with respect to public affairs relating to criminal prosecution and enforcing the law.  The responsibilities and importance of Plaintiff's position as an Elyria prosecutor places him well beyond the status of most public employees.  Accordingly, Plaintiff is a public official and the actual malice standard applies.  See *Rosenblatt*.

As established above, the alleged defamatory statement related to Plaintiff's public employment as a prosecutor and there is no clear and convincing evidence of actual malice.  Therefore, all of Plaintiff's defamation claims fail as a matter of law.

### B.    Plaintiff's false light-invasion of privacy claim fails as a matter of law.

Plaintiff's false light-privacy claim contends that Mr. Serazin purposely communicated false information regarding his suspension and termination letter to a news reporter and this false information was publicized due to a published local newspaper article.  Despite these contentions, the false light-privacy claims fail as a matter of law.

12

### 1.    The applicable legal standards for false light-privacy claims.

To succeed on a claim under the false light theory of invasion of privacy, Plaintiff must establish that "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  *Welling v. Weinfeld* (2007), 113 Ohio St.3d 464, 2007-Ohio-245, at the syllabus.  The false light claim standard includes the actual malice standard applied to certain defamation claims.  *Id*. at ¶61.

Unlike defamation claims, however, false light claims require the alleged false matter to be publicized.  *Id*. at ¶52.  Publicity requires that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  *Id*. at ¶53.  A mere publication to a third-party does not satisfy the publicity requirement of a false light claim.  *Id*.  Also, unlike defamation claims, the matter that is publicized must be highly offensive to a reasonable person.  *Id*.

Despite these distinctions between false light claims and defamation claims, false light defendants are afforded at least as much protection as defamation defendants.  *Waters v. Ohio State Univ.*, Ct. of Cl. No. 2015–00457, 2016–Ohio–5260, ¶49, quoting *Welling* at ¶58. For example, the defense of qualified privilege is applicable to false light claims.  *Id.*  Indeed, the same reasons that necessitate the dismissal of a defamation claim support the dismissal of a false light claim. *Id.* at ¶50.  *Dickinson v. Spieldenner*, 6th Dist. No. L–16–1041, 2017-Ohio-667, at ¶¶30-31.

### 2.    Certain alleged false matters were not publicized.

The false light claim improperly asserts that certain communications and the disclosure of the suspension/termination letters from Mr. Serazin to Ms. Roberson represent a basis for the claim.  These communications and the disclosure of letters, however, cannot satisfy the false light

claim's requirement for publicity.  See *Welling*.  At most, these communications and disclosures can only be considered publications.  The only potential publicized information would be contained in the August 5, 2016 newspaper article.  Accordingly, to the extent the false light claim is predicated upon communications with and letters disclosed to Ms. Roberson, the claim fails as a matter of law due to lack of publicity.

> **3.     The false light claims fail because the alleged matter publicized in the article was not highly offensive and did not portray Plaintiff in a false light.**

Plaintiff testified that the only alleged false statement publicized in the newspaper article stated, "My people represent two jurisdictions, all the work has to be documented so any work not done for Elyria is done off the clock."  (Plaintiff Depo., Ex. A, at 197-198.)  This statement cannot be considered highly offensive to Plaintiff.  The statement does not reference Plaintiff and merely provides information regarding Elyria's policy prohibiting prosecutors from working for outside jurisdictions while contemporaneously working for Elyria.  Because this statement cannot be considered highly offensive to Plaintiff and does not portray Plaintiff in a false light, the false-light privacy claim fails as a matter of law.  See *Welling*.

> **4.     The false light claims fail for the same reasons as the defamation claims.**

As established above, the defamation claims fail based upon privilege and the absence of clear and convincing evidence of actual malice.  The false light claims fail for these same reasons. In short, the newspaper article comments were made by a public officer and were made in relation to issues that were of a legitimate public concern.  There is no clear and convincing evidence any comments in the article were false or made with actual malice.  Again, prior to speaking with Ms. Roberson, Mr. Serzain conducted an investigation of Plaintiff's conduct which showed Plaintiff was violating Elyria's policy against double billing.  Also, after reviewing the Unemployment

14

Compensation hearing, the Court found competent and credible evidence that Plaintiff was violating Elyria policy by billing for Grafton work while on Elyria time. Therefore, a qualified privilege applies and there is no clear and convincing evidence of actual malice. For these additional reasons, Plaintiff's false-light privacy claim fails as a matter of law.

### C. Plaintiff's federal and state law malicious prosecution claims fail as a matter of law.

Plaintiff attempts to assert claims of malicious prosecution under state and federal law. The federal malicious prosecution claim is brought via 42 U.S.C. 1983 and attempts to assert violations of the Fifth and Fourteenth Amendments to the United States Constitution. For the following reasons, the malicious prosecution claims fail as a matter of law.

#### 1. The federal malicious prosecution claim is not viable.

As previously determined by this Court, Plaintiff's malicious prosecution claim based upon an alleged Fourth Amendment violation is not viable because Plaintiff was not deprived of his Fourth Amendment liberty rights. (ECF #35) In short, because the Plaintiff was never arrested, incarcerated, required to post bond, or subject to any other restrictions to his movement, this Court found the Fourth Amendment malicious prosecution claim was not viable. (Id.) In an attempt to circumvent the absence of a viable Fourth Amendment malicious prosecution claim, Plaintiff attempts to assert an unsupported federal malicious prosecution claim for an alleged violation of procedural due process under the Fifth and Fourteenth Amendments.

At the outset, the Fifth Amendment procedural due process claim is clearly not viable because the Fifth Amendment due process rights only apply to federal actors. *Scott v. Clay Cnty., Tennessee*, 205 F.3d 867, 873 n.8 (6th Cir.2000). Furthermore, as stated in this Court's prior Order, the Sixth Circuit has never addressed whether a plaintiff can state a viable malicious prosecution claim under the Fourteenth Amendment. (Id.) Instead, the Sixth Circuit has only reviewed

malicious prosecution claims under the Fourth Amendment.   See, e.g., *Gregory v. City of Louisville*, 444 F.3d 725, at fn. 10 (6th Cir.2006); *Noonan v. Cty. of Oakland*, 683 Fed. Appx. 455 (6th Cir.2007); *Johnson v. Ward*, 43 Fed. Appx. 779, 782 (6th Cir. 2002) ("As this court has stated, 'the substantive component of the Fourteenth Amendment's Due Process Clause, 'with its scarce and open-ended guideposts,' may not serve as the basis for a § 1983 malicious prosecution claim.' *Darrah v. City of Oak Park,* 255 F.3d 301, 308 (6th Cir.2001); *Frantz v. Village of Bradford,* 245 F.3d 869, 876 (6th Cir.2001)

The right to be free from malicious prosecution "must be asserted according to the Fourth Amendment." *Spurlock v. Satterfield,* 167 F.3d 995, 1006 n. 19 (6th Cir.1999).  *See also, Scheffler v. Lee,* No. 3:14-CV-00373, 2017 WL 6396139, *7 (W.D.Ky.); *Trapp v. Kimpel*, No. 3:13-cv-18, 2013 WL 4510570, *6 (S.D.Ohio) ("While Plaintiff purports to assert these claims pursuant to the Fourth, Fifth, Eighth and Fourteenth Amendment of the United States Constitution, courts recognize the existence of a malicious prosecution claims arising only from a violation of the Fourth Amendment.").  Indeed, the elements for a federal malicious prosecution claim as set forth by the Sixth Circuit only pertain to malicious prosecution claims under Fourth Amendment jurisprudence. *Noonan*, supra.  See, also, *Sykes v. Anderson*, 625 F.3d 294, 308-309.  In fact, the Sixth Circuit has never provided any construct or guidance regarding how a malicious prosecution claim for an alleged procedural due process claim under Fifth or Fourteenth Amendments could or should be legally analyzed.

Accordingly, based upon the Supreme Court's decision in *Albright v. Oliver,* 510 U.S. 266 (1994), and the absence of any legal authority from the Sixth Circuit, the malicious prosecution claim cannot be brought under the Fourteenth Amendment for an alleged procedural due process violation.  For this reason alone, the federal malicious prosecution claim fails as a matter of law.

16

Moreover, Plaintiff has not presented any evidence that he was entitled to procedural due process under the circumstances or that his procedural due process rights were violated.  Mr. Serazin referred the unethical billing matter to the Lorain County Prosecutor's Office for an outside investigation.  At the time of Mr. Serazin's referral, Plaintiff was not employed by Elyria.  Moreover, the Lorain County Prosecutor's Office ultimately referred the matter to the Ohio Auditor to conduct an outside investigation.  The Ohio Auditor reviewed the matter and choose not to pursue any further action.  There is no evidence that the foregoing implicated any right to procedural due process; nor is there any evidence that some unknown procedural right was violated.  For this additional reason, Plaintiff's federal malicious prosecution claim is not viable.

### 2.    Mr. Serazin is entitled to qualified immunity as to the federal malicious prosecution claim.

Plaintiff bears the burden of establishing that a defendant is not entitled to qualified immunity.  *Harris v. Bornhorst*, 513 F.3d 503, 520 (6th Cir.2008).  To overcome qualified immunity, the plaintiff must show that:  1) a constitutional right has been violated; and 2) that at the time of the alleged violation, case law clearly established that a reasonable official in the defendant's position should have known that their conduct would violate the constitution.  *Pray v. Sandusky*, 49 F.3d 1154, 1157 (6th Cir.1995).  Under the second prong, the law must be clear in regard to the official's particular actions in the particular situation.  *Saylor v. Bd. of Educ. of Harlan Cty.,* 118 F.3d 507, 515–16 (6th Cir.1997).  Indeed, the law must be beyond debate that the complained of conduct would violate a constitutional right.  *Stanton v. Sims*, 571 U.S. 3, 5 (2013); *White v. Pauly,* 137 S.Ct. 548, 551, (2017).

Here, as established above, Plaintiff has not established that his procedural due process rights under the Fifth and/or Fourth Amendments were implicated or violated under the

circumstances.  Thus, Mr. Serazin is entitled to qualified immunity and the federal malicious prosecution claim asserted against him should be dismissed.

Also, as established above, there is no Sixth Circuit law that would clearly establish beyond debate to a reasonable official in Mr. Serazin's position that his referral of the unethical billing to the Lorain County Prosecutor's Office could violate Plaintiff's Fifth and/or Fourteenth Amendment procedural due process rights.  *Stanton*; *White*.  For this additional reason, Mr. Serazin is entitled to qualified immunity and the federal malicious prosecution claim should be dismissed.

### 3.    A *Monell* claim against Elyria fails as a matter of law.

Because Plaintiff attempts to assert the federal malicious prosecution claim against Elyria, he must show that Elyria is subject to liability under the standards established by *Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978).  First, because Mr. Serazin has committed no constitutional violations, any *Monell* claim cannot be sustained against Elyria.  The United States Supreme Court and Sixth Circuit have held that if an individual defendant "inflicted no constitutional injury on [the plaintiff], it is inconceivable that [a local government] could be liable" for a *Monell* claim. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Peet v. Detroit*, 502 F.3d 557, 566 (6th Cir.2007). As established above, there was no implication or violation of Plaintiff's Fifth or Fourteenth Amendment rights to procedural due process.  Thus, per *Heller* and *Peet*, Plaintiff's *Monell* claims against Elyria fail as a matter of law and should be dismissed.

The *Monell* claims also fail as a matter of law because the second prong of the qualified immunity defense – the clearly established law prong – cannot be proven by Plaintiff.  When the law is not clearly established, the plaintiff cannot show knowledge of and acquiescence to an inadequate policy; nor can the plaintiff show fault rising to deliberate indifference to a person's constitutional rights necessary for a *Monell* claim.  *Hagans v. Franklin Cty. Sheriff's Office*, 695

18

F.3d 505, 511 (6th Cir.2012); *Arrington-Bey v. Bedford Heights*, 858 F.3d 988, (6th Cir.2017); *Ahlers v. Schebil* (6th Cir.1999), 188 F.3d 365, 372 (requiring knowing or intentional constitutional violation.)  In this case, as noted above, it cannot be shown that Elyria knowingly violated Plaintiff's Constitutional rights when there was no clearly established law confirming that the complained of conduct could result in a violation of procedural due process under the Fifth or Fourteenth Amendments.  *Hagans*; *Arrington-Bey; Ahlers*.  For this additional reason, the *Monell* claim fails as a matter of law and summary judgment is appropriate.

Finally, the *Monell* claim also fails because Plaintiff fails to allege or show any evidence that the conduct complained of was the direct result of an inadequate policy, practice or custom, or a failure to train/supervise/discipline.  *Canton v. Harris*, 489 U.S. 390-391; *Monell*, supra.  For this reason, the *Monell* claim fails as a matter of law and summary judgment is appropriate.

### 4.  Plaintiff's state law malicious prosecution claim fails as a matter of law.

"Under Ohio law, '[t]he elements of the tort of malicious criminal prosecution are (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Thacker v. Columbus,* 328 F.3d 244, 260-261 (6th Cir. 2003).  An absolute privilege applies to a malicious prosecution claim when the claim is based upon statements to a prosecutor.  *Haller v. Borror* (1995), 10th Dist. No. 95APE01-16, 1995 WL 479424, citing *DiCorpo*, supra.  See, also, *Lee v. Upper Arlington*, 10th Dist. No. 03AP-132, 2003-Ohio-7157.  See, e.g., *Reasbeck v. Wheeling Pittsburgh Steel Corp.*, 230 F.3d 1359, (6th Cir.2000).

Plaintiff's state law malicious prosecution claim is premised upon Mr. Serazin referring the investigation of Plaintiff's double billing to the Lorain County Prosecutor.  The Ohio Supreme Court's holding in *DiCorpo* that a statement to a prosecutor regarding a potential crime or illegal activity is entitled to an absolute privilege has been extended to malicious prosecution claims.

19

*Haller*, *Lee v. Upper Arlington*, *Reasbeck*.  Accordingly, Plaintiff's state law claim for malicious prosecution is barred by an absolute privilege.

Moreover, the state law malicious prosecution claim fails because there is no evidence that a criminal proceeding was instituted as a result of Mr. Serazin's referral, that probable cause did not exist, or that a criminal proceeding was terminated in favor of Plaintiff.  First, there was no criminal proceeding instituted as the Lorain County Prosecutor's Office merely referred the matter to the Ohio Auditor to conduct an investigation.  Mr. Serazin had no input in the decision to have the Ohio Auditor investigate the matter.  And the Auditor's review of the matter was not the institution of a criminal proceeding for purposes of a malicious prosecution claim.  See, e.g., *Taylor v. Streicher*, 465 Fed.Appx. 414, 420 (6th Cir.2012).

Moreover, the Auditor's decision to not pursue the matter is not a termination of a criminal proceeding in favor of Plaintiff.  *LeFever v. Ferguson*, 956 F.Supp.2d 819, 840-841 (6th Cir.2013), citing *Ash v. Ash* (1995)*,* 72 Ohio St.3d 520, 522, ("A proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent.").  Finally, as established above, Mr. Serazin's review of time records, billing entries, court dockets, and statements by staff are a sufficient basis to establish probable cause for a potential crime.  *State v. Heston* (1972), 29 Ohio St.2d 152, 155-156, quoting *Beck v. Ohio* (1964), 379 U.S. 89, 91.  The basis for probable cause is further supported by the state court's finding that there was competent and credible evidence that Plaintiff was violating Elyria policy by billing for Grafton work while on Elyria time.  *Id*.  For each of these additional reasons, Plaintiff's state law malicious prosecution claim fails as a matter of law.

    **D.**      **All of Plaintiff's state law claims fail based upon R.C. Chapter 2744 immunity.**

        **1.**      **Elyria is entitled to R.C. Chapter 2744 immunity.**

All of Plaintiff's state law claims are predicated upon Mr. Serazin's communications with individuals or entities following Plaintiff's employment termination.  Accordingly, with respect to all state law claims, Elyria is entitled to R.C. Chapter 2744 immunity.

Elyria, as a municipal corporation, is a political subdivision and is therefore entitled to R.C. Chapter 2744 immunity.  *Walsh v. Village of Mayfield*, Eleventh Dist. No. 92309, 2009-Ohio-2377, at ¶11.  Elyria's immunity can only be removed if Plaintiff can establish one of the five very limited exceptions listed at R.C. 2744.02(B).  *Howard v. Miami Twp. Fire Div.* (2008), 119 Ohio St. 3d. 1, 4.  These five immunity exceptions are to be narrowly construed.  *Doe v. Dayton City School Dist. Bd. of Educ.* (1999), 137 Ohio App.3d 166, 169.  The exceptions set forth under R.C. 2744.02(B) relate to the following:

(1) injuries caused by the negligent operation of a motor vehicle;

(2) the negligent performance of acts with respect to a proprietary function;

(3) the negligent failure to keep public roads in repair and free of obstructions;

(4) negligence within or on the grounds of buildings used for governmental functions causing injuries due to physical defects; and

(5) when liability is expressly imposed upon the political subdivision by a section of the Revised Code.

Plaintiff cannot establish any immunity exception in the instant case.  None of his claims against Elyria relate to the negligent operation of a motor vehicle, negligent failure to keep roads in repair or negligence on the grounds of a public building due to a physical defect.  Also, there are no Ohio Revised Code provisions that expressly impose civil liability upon a political subdivision predicated upon the malicious prosecution claim.

Moreover, the exception for the negligent performance of a proprietary function listed within R.C. 2744.02(B)(2) does not apply because Plaintiff's state claims against Elyria are

21

causally related to express governmental functions. Specifically, R.C. 2744.02(C)(2) defines the following as express governmental functions:

    (b)     The power to preserve the peace; … and to protect persons and property;

    (f)     Judicial, quasi-judicial, prosecutorial, legislative, and quasi-legislative functions;

    (i)     The enforcement or nonperformance of any law.

Plaintiff's allegations regarding the alleged impropriety of informing Ms. Roberson regarding the reason for termination and referring this matter to the Lorain County Prosecutor falls within the above express governmental functions, and the proprietary function exception is inapplicable. Thus, none of the immunity exceptions apply.

Additionally, the state law claims represent intentional torts. *Ziegler v. Mahoning Cty. Sheriff's Dept.* (2000), 137 Ohio App.3d 831, 836; *Welling*, supra; *Coleman v. Cleveland School Dist. Bd. of Edn.,* 8th Dist. Nos. 84274 and 84505, 2004-Ohio-5854. Ohio Appellate Courts have consistently held that political subdivisions are exempt from intentional tort claims, reasoning that the R.C. 2744.02(B) immunity exceptions only refer to negligence and do not provide a specific exception for intentional torts, including specifically malicious prosecution and false arrest. See, e.g., *Griffits v. Newburgh Heights*, Eighth Dist. No. 91428, 2009-Ohio-493; *Coleman v. Beachwood*, 8th Dist. No. 92399, 2009-Ohio-5560; *Ziegler*. Thus, for this additional reason, none of the immunity exceptions apply and Elyria is entitled to immunity.

### 2. Mr. Serazin is entitled to R.C. Chapter 2744 immunity.

As an employee of a political subdivision, Mr. Serazin is entitled to immunity under R.C. 2744.03(A)(6) as to all of the state law claims. *Zumwalde v. Madeira & Indian Hill Joint Fire Dist.*, 128 Ohio St.3d 492, 2011–Ohio–1603. *Mayes v. Columbus* (1995), 105 Ohio App.3d 728. By its terms, R.C. 2744.03(A)(6) operates as a presumption of immunity. *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90 (1995). This presumption may only be overcome by demonstrating that an

exception to immunity applies.  *M.B. v. Elyria City Bd. of Educ.*, 9th App. Dist., 05CA008831, 2006-Ohio-4533.

None of the exceptions apply in this case. The Complaint concedes that Mr. Serazin was acting within the scope of his employment.  (Compl. at ¶6.)  Therefore, the immunity exception under R.C. 2744.03(A)(6)(a) does not apply.  Also, the R.C. 2744.03(A)(6)(c) immunity exception does not apply because Plaintiff has not cited, and the Defendants are not aware of, any Revised Code provision that expressly imposes civil liability on Mr. Serazin based on the claims.

Also, the exception to immunity under R.C. 2744.03(A)(6)(b) does not apply as there is no evidence of recklessness, wantonness, malice or bad faith.  "Bad faith" implies sinister motive and also refers to that which has "no reasonable justification." *Pierce v. Woyma* (1997), Eighth Dist. No. 97545, 2012-Ohio-3947, at ¶15. "Malice" is defined as the willful and intentional design to harm another by inflicting serious injury without excuse or justification.  *Garrison v. Bobbitt* (1999), 134 Ohio App.3d 373, 384 (Second Dist.).  "Wanton" misconduct refers to a failure to exercise any care whatsoever.  *Anderson v. Massillion*, 134 Ohio St. 3d. 380, 2012-Ohio-5711, at ¶33.  "Recklessness" is a perverse disregard of a known risk.  *Id.* at ¶34.  *O'Toole v. Denihan* (2008), 118 Ohio St.3d 374, at paragraph three of the syllabus.

As described above, there is no evidence that Mr. Serazin's level of mental culpability in making the comments that relate to the state law defamation, false light, and malicious prosecution claims reaches the high standards of recklessness, wantoness, malice, or bad faith.  Mr. Serazin's issuance of the disciplinary/suspension letters were based upon the need to address Plaintiff's workplace transgressions and various conflicts of interests.  Likewise, his communications regarding Plaintiff's improper double-billing were necessary to address a matter of public concern involving a public prosecutor's misconduct.  Any communication with the Lorain County

Prosecutor and/or Ohio Auditor was appropriate to report potential illegal and/or ethical concerns. Prior to any of the communications at issue, Mr. Serazin had personal involvement and/or investigated the workplace transgressions, and only communicated the information he had obtained from his involvement or investigation.  In short, Mr. Serazin had investigated the matter and determined that Plaintiff had violated Elyria's policy regarding working on outside jurisdictions legal matters while on Elyria time.  There simply is no evidence establishing that Mr. Serazin acted recklessly, wantonly, maliciously, or in bad faith.

Based upon the foregoing, none of the R.C. 2744.03(A)(6) immunity exceptions apply, and Mr. Serazin is entitled to immunity.  For this additional reason, all of the state law claims against Mr. Serazin fail as a matter of law.

> **E.** **Plaintiff's federal and state law claims for disability discrimination fail as a matter of law.**

Plaintiff claims that a failure to provide an accommodation for his ADHD and his employment termination were the result of disability discrimination under the ADA and R.C. 4112.02(A).  Plaintiff attempts to assert these disability claims against both Elyria and Mr. Serazin. For the reasons that follow, the disability discrimination claims fail as a matter of law.

> **1.** **The discrimination claims against Mr. Serazin fail because he is not an "employer".**

Both the ADA and R.C. 4112.02(A) prohibit an "employer" from discriminating against disabled employees.  R.C. 4112.02(a); 42 U.S.C. 2000e-2(a).  The Sixth Circuit and Ohio Supreme Court have determined that the term "employer" under each statute excludes individual employees from potential liability under the anti-discrimination statutes.  *Wathen v. Gen. Elec. Co.,* 115 F.3d 400, 406 (6th Cir.1997); *Hauser v. Dayton Police Dept.*, 140 Ohio St.3d 268, 2014-Ohio-3636.

Thus, Mr. Serazin is not an "employer" subject to potential liability for disability discrimination under the ADA and R.C. 4112.02(A), and the claims asserted against him fail as a matter of law.

   **2.  The disability discrimination claims against Elyria fail on the merits.**

Courts evaluate federal ADA claims and state disability discrimination claims under R.C. 4112.02(A) jointly.  Accordingly, Ohio courts may look to cases and regulations interpreting the federal Americans with Disabilities Act ("ADA") in interpreting the Ohio anti-discrimination statutes.  *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 573, 697 N.E.2d 204, 206–207. *Shaver v. Wolske & Blue* (2000), 138 Ohio App. 3d 653.

Disability discrimination can be established through either direct or indirect evidence. Because this charge involves alleged indirect evidence, the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, (1973) is applicable.  Under the burden shifting analysis, Plaintiff must first establish a prima facie case of disability discrimination.  If Plaintiff meets this burden, then Elyria must present evidence of a legitimate, non-discriminatory reason for the complained of adverse employment action.  Plaintiff then has the ultimate burden of showing that the legitimate non-discriminatory reason established by Elyria was a pretext for disability discrimination.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).

To demonstrate a prima facie case of disability discrimination Plaintiff must show that (1) he is disabled; (2) he is otherwise qualified for the position with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) his employer knew or had reason to know of his disability; and (5) his position remained open.  *Hammon v. DHL Airways, Inc.* 165 F.3d 441, 449 (6th Cir.1999).  Further, to establish a claim under the ADA, Plaintiff must show that Elyria's adverse employment action was "because of" or "but-for" Plaintiff's alleged disability.  *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir.2012).

Accordingly, Plaintiff must show that Elyria would **not** have suspended or terminated his employment if he did **not** have ADHD.  *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753 (6th Cir.2015).

The Sixth Circuit has also made it clear that to establish a prima facie case under the ADA, Plaintiff must show that Elyria had knowledge of a disability that precludes Plaintiff from fulfilling his job duties without accommodation **prior** to the adverse employment actions.  *Hammons*, supra; *Nilles v. Givaudan Flavors Corp.*, 521 Fed.Appx. 364, 368 (6th Cir. 2013); *Cash v. Siegel-Robert, Inc.*, 548 Fed. Appx. 330, 335.  Indeed, "[t]he employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation."  *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 (6th Cir.1998); See, also, *Hammons*, supra.

Plaintiff fails to establish a prima facie case under the ADA for multiple reasons.  First, Elyria had no notice that his ADHD was precluding him from accomplishing his job duties as a prosecutor until after the adverse employment action had been initiated.  Likewise, no accommodation request was made until after the adverse employment action had been initiated.  The Sixth Circuit has held that under these circumstances a prima facie case of disability discrimination cannot be established.  *Yarberry v. Gregg Appliances, Inc.*, 625 Fed.Appx. 729 (6th Cir.2015); *Parsons v. Auto Club Group*, 565 Fed.Appx. 446 (6th Cir.2014).  For this reason, Plaintiff's disability discrimination claims fail as a matter of law.

Moreover, Plaintiff certainly cannot show that the suspension and termination of his employment were "because of" or the "but-for" cause of these adverse employment actions.  Again, the aforementioned timing of the suspension/termination in relation to the notice of the disability/accommodations precludes Plaintiff from showing the adverse employment actions were "because of" his claimed disability.  Rather, the suspension and termination of employment were

the result of numerous workplace transgressions culminating in the egregious unethical double billing.

Further, Plaintiff's claimed ADHD simply does not relate to his workplace transgressions as the most serious of the violations do not arise from inattention but instead relate to mishandling of criminal matters due to improper legal analysis, failing to recognize obvious conflicts of interest, and violating express written Elyria policies.  Plaintiff's claimed ADHD also has no relation to his persistent placement of his private business interests before his duties as an Elyria prosecutor. Accordingly, Plaintiff's suspension/termination was not "because of" his claimed disability and, therefore, a prima facie case of discrimination cannot be established.

In addition, Plaintiff cannot establish that he was qualified to act as an Elyria prosecutor with or without a reasonable accommodation. As acknowledged by Plaintiff, his duties required him to independently exercise judgment and discretion and to fulfill his prosecutorial duties in a timely, responsible manner before the Court and without supervision.  The prosecutorial position calls for a high degree of autonomy and the ability to independently handle criminal matters.   The accommodations requested by the medical letter are not reasonable as they seek to relieve Plaintiff of these essential functions of an attorney prosecutor.  Accordingly, the accommodations requested are not reasonable and Plaintiff is simply not qualified to continue his employment as an Elyria Prosecutor with or without an accommodation.   For this additional reason, Plaintiff cannot establish his disability discrimination claims.

Finally, there is no evidence that the decision to suspend/terminate Plaintiff's employment was the result of intentional disability discrimination.  As discussed thoroughly above, the decision to suspend/terminate Plaintiff's employment was due to his extensive history of workplace transgressions that culminated in his unethical double billing.  The decision to suspend/terminate

27

his employment was initiated prior to Plaintiff informing anyone that his ADHD was causing his transgressions and that his ADHD required an accommodation.  This evidence establishes that there was no intentional disability discrimination by Elyria.  For this additional reason, Plaintiff's disability discrimination claims fail as a matter of law.

**F.      Plaintiff's federal and state retaliation claims fail as a matter of law.**

Plaintiff attempts to assert state and federal claims for retaliation under R.C. 4112.02; the ADA, and the FMLA.  For the following reasons, Plaintiff's retaliation claims fail as a matter of law.

**1.      Mr. Serazin cannot be individually liable for retaliation under the federal claims.**

As noted above, Mr. Serazin is not an "employer" under the ADA and, therefore, is not subject to individual liability under the statute.  Moreover, the Sixth Circuit Court of Appeals has concluded that public employees such as Mr. Serazin are not subject to individual liability under the FMLA.  *Mitchell v. Chapman,* 343 F.3d 811, 828 (6th Cir.2003).  Accordingly, Mr. Serazin cannot be subject to any individual liability with respect to the federal retaliation claims.

**2.      The retaliation claims fail on the merits.**

At the outset, the state and federal retaliation claims are all evaluated under the aforementioned *McDonnell Douglas* burden-shifting framework.  To establish a prima facie case of retaliation Plaintiff must show that (1) he engaged in a protected activity; (2) Defendants were aware that Plaintiff had engaged in that activity; (3) Defendants took an adverse employment action against Plaintiff; and (4) there is a causal connection between the protected activity and adverse action.  *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990).

Furthermore, Plaintiff has to establish "but-for" causation to establish a retaliation claim. *Univ. of Texas, Sw. Med. Ctr. v Nassar*, 133 S.Ct. 2517 (2013).  The "but-for" standard requires

Plaintiff to show that the unlawful retaliation would not have occurred in the absence of the Plaintiff engaging in protected activity. *Univ. of Texas, Sw. Med. Ctr. v Nassar*, 133 S.Ct. 2517 (2013). *Smith v. Dept. of Pub. Safety*, 10th Dist. No. 12AP-1073, 2013-Ohio-4210.

Also, the United States Supreme Court and Sixth Circuit have affirmatively found that temporal proximity and a causal connection cannot be established when the alleged protected activity occurs after the employer has initiated the complained of adverse employment action. *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, (2001); *Reynolds v. Federal Exp. Corp.*, 544 Fed.Appx. 611, 615 (6th Cir. 2013); *Reynolds v. Extendicare Health Servs. Inc.*, 257 Fed.Appx 914, 920-921 (6th Cir. 2007). The Supreme Court expressly concluded that "[e]mployers need not suspend previously planned [adverse employment action] upon discovering that [protected activity] has [occurred], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Breeden* at 272.

First, Plaintiff contends that raising his ADHD as an issue during the July 22, 2016 termination meeting and providing the doctor's letter thereafter represent his protected activity. Protected activity, however, is defined as an employee's express opposition to an employer's discriminatory practice. *Willoughby v. Allstate Ins. Co.*, 104 Fed.Appx 528, 530 (6th Cir. 2004). *Brown v. VHS of Mich. Inc.*, 545 Fed. Appx. 368, 374 (2013). Here, Plaintiff's reference to his ADHD during the July 22, 2016 meeting and the subsequent letter from his doctor do not expressly oppose any alleged discriminatory practice. Rather, they merely reiterate the existence of Plaintiff's ADHD and the potential need for leave in the future. For this reason, Plaintiff did not engage in protected activity and the retaliation claims fail as a matter of law.

Moreover, Plaintiff's retaliation claims fail because the adverse employment action was initiated prior to Plaintiff's alleged protected activity. Specifically, Mr. Serazin investigated the

double billing and drafted the July 22, 2016 termination letter prior Plaintiff raising his ADHD as an issue and prior to the doctor's letter. This letter was meant to be a termination letter, but was changed to a suspension so that Mr. Serazin, having heard for the first time that Plaintiff claimed his alleged ADHD was causing his problems, could meet with Plaintiff's attorney. It was not until after the meeting and the issuance of the July 22, 2016 letter that the doctor's letter was received. Based upon Supreme Court and Sixth Circuit case law, the attempt to engage in protected activity **after** the adverse employment action was initiated cannot establish a retaliation claim. *Breeden*, supra; *Federal Exp. Corp.* The timing of Plaintiff's alleged protected activity also prevents him from showing that Defendants intentionally retaliated against Plaintiff for engaging in protected activity. For these additional reasons, Plaintiff's retaliation claims fail as a matter of law.

## V.  CONCLUSION

Based upon the foregoing, all of Plaintiff's claims fail as matter of law and should be dismiss with prejudice.

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/John D. Pinzone*
JAMES A. CLIMER (0001532)
JOHN D. PINZONE (0075279)
100 Franklin's Row
34305 Solon Road
Cleveland, OH  44139
(440) 248-7906
(440) 248-8861 – Fax
Email:   jclimer@mrrlaw.com
            jpinzone@mrrlaw.com

Counsel for Defendants City of Elyria and Scott F. Serazin, in his official capacity

*/s/Stephen P. Bond*

30

STEPHEN P. BOND (0000344)
Brouse McDowell
600 Superior Ave., Ste. 1600
Cleveland, OH 44035
(440) 830-6810
Email:  sbond@brouse.com

Counsel for Defendant Scott F. Serazin,
Individually

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2018, a copy of the foregoing Defendants' Motion for Summary Judgment was filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*s/John D. Pinzone*
JAMES A. CLIMER (0001532)
JOHN D. PINZONE (0075279)

Counsel for Defendants City of Elyria and Scott F. Serazin, in his official capacity