**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| MATTHEW A. MISHAK, | ) | CASE NO: 1:17CV1543 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| SCOTT F. SERAZIN, et al., | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |

This case is before the Court upon consent of the parties, entered October 10, 2017.

(Doc. No. 20.) Currently pending is Defendants City of Elyria and Scott Serazin's Motion for

Summary Judgment. (Doc. No. 46.) Plaintiff Matthew Mishak filed a Brief in Opposition on

August 1, 2018, to which Defendants replied. (Doc. Nos. 60, 63.) In addition, after receiving

permission from the Court, Plaintiff filed a Sur-Reply on August 21, 2018, to which Defendants

responded on September 4, 2018. (Doc. Nos. 65, 67.)

For the following reasons, Defendants' Motion for Summary Judgment (Doc. No. 46) is

GRANTED as to Mishak's federal claims. The Court declines to exercise supplemental

jurisdiction over Mishak's state law claims for defamation, invasion of privacy (false light),

malicious prosecution, disability discrimination, and retaliation, and hereby dismisses said

claims without prejudice.

## I. Procedural Background

On July 21, 2017, Plaintiff Matthew Mishak ("Plaintiff" or "Mishak") filed a *pro se*

Complaint in this Court against Defendants Scott F. Serazin (Office of the Elyria Law Director,

in his individual and official capacities) and the City of Elyria, alleging various state and federal claims arising from his demotion and eventual termination as prosecutor for the City of Elyria. (Doc. No. 1.)  Defendants filed an Answer and Partial Motion for Judgment on the Pleadings on September 8, 2017.  (Doc. Nos. 10, 11.)

Mishak thereafter retained counsel and filed his First Amended Complaint on September 22, 2017.  (Doc. No. 13.)  The First Amended Complaint asserted the following 12 claims: (1) defamation *per se* – libel and slander (Count 1); (2) invasion of privacy– false light (Count 2); (3) malicious prosecution under 42 U.S.C. § 1983 (Count 3); (4) abuse of process under 42 U.S.C. § 1983 (Count 4); (5) state and federal disability discrimination claims based upon alleged failure to accommodate (Counts 5 and 6); (6) state and federal disability discrimination claims based upon alleged disparate treatment (Counts 7 and 8); (7) state and federal retaliation claims (Counts 9 and 10); (8) retaliation claim under the Family & Medical Leave Act (Count 11); and (9) loss of employment under 42 U.S.C. § 1983 (Count 12).

On October 3, 2017, Defendants filed a "Motion for Partial Judgment on the Pleadings responsive to the Amended Complaint," in which they sought judgment in their favor with respect to six of Mishak's twelve claims.[1]  (Doc. No. 16.)  Mishak filed a Brief in Opposition on October 17, 2017, to which Defendants replied.  (Doc. Nos. 23, 25.)

On February 7, 2018, this Court issued a Memorandum Opinion & Order granting in part and denying in part Defendants' Motion.  (Doc. No. 26.)  Specifically, the Court granted Defendants' motion with respect to Mishak's abuse of process (Count Four) claim and denied

---

[1] Defendants' previous Partial Motion for Judgment on the Pleadings, filed September 8, 2017, was denied as moot based upon the filing of the First Amended Complaint.  (Doc. No. 21.)

the motion with respect to his invasion of privacy– false light (Count Two) and disparate treatment claims (Counts Seven and Eight). In addition, the Court denied Defendants' motion with respect to Mishak's federal malicious prosecution claim (Count Three) without prejudice. (Doc. No. 26 at 10-11.) With respect to this claim, the Court explained:

> The Court finds it would be appropriate to dismiss Mishak's Section 1983 malicious prosecution claim without prejudice. Mishak argues, and Defendants do not contest, there remains the potential a malicious prosecution claim might exist depending on the outcome of the Ohio Auditor's investigation. Under these circumstances, the Court finds it would be premature to dismiss this claim without permitting Mishak an opportunity to seek leave to amend his First Amended Complaint once the investigation is concluded.

(*Id*. at 10-11.)

Shortly thereafter, on February 10, 2018, Mishak filed a Motion for Leave to File Second Amended Complaint *Instanter*. (Doc. No. 27.) Therein, Mishak sought leave to add claims for malicious prosecution under both state and federal law "because those claims have now become ripe due to the Ohio State Auditor dismissing its investigation against him on November 28, 2017." (*Id*. at 1.) Defendants filed a Brief in Opposition on February 26, 2018, to which Mishak replied. (Doc. Nos. 28, 31.)

On March 19, 2018, this Court issued an Order granting in part and denying in part Mishak's Motion, as follows:

> The Court GRANTS Plaintiff's Motion for Leave to Amend with respect to his (1) malicious prosecution claim under Ohio law; and (2) malicious prosecution claim under federal law to the extent it is premised on a violation of the Fourteenth Amendment. The Court DENIES Plaintiff's Motion for Leave to Amend with respect to his federal malicious prosecution claim to the extent it is premised on a violation of the Fourth Amendment.

(Doc. No. 35 at 18.) Mishak thereafter filed a Second Amended Complaint adding the above claims. (Doc. No. 36.) Defendants filed an Answer on March 29, 2018. (Doc. No. 37.)

3

On July 2, 2018, Defendants filed a Motion for Summary Judgment as to all of Mishak's claims. (Doc. No. 46.) Mishak filed a Brief in Opposition on August 1, 2018, to which Defendants replied. (Doc. Nos. 60, 63.) In addition, after receiving permission from the Court, Mishak filed a Sur-Reply on August 21, 2018, to which Defendants responded on September 4, 2018. (Doc. Nos. 65, 67.)

This matter is now fully briefed and ripe for consideration.

## II. Facts

Mishak and Serazin met and became friends when they both worked at the Lorain County Prosecutor's Office from approximately 2006 to 2011. In 2011, Serazin ran for Elyria Law Director and Mishak assisted with his campaign. Serazin won the election and became Elyria Law Director in January 2012. He appointed Mishak as Elyria Chief Prosecutor. According to Mishak, during this time period, he spoke generally with Serazin about the fact that he suffered from Attention Deficit Hyperactivity Disorder ("ADHD"). (Doc. Nos. 51, 52, Mishak Depo. at Tr. 157-160.)

It is undisputed there were no problems or issues relating to Mishak's job performance until July 2013. At that time, Serazin disapproved of Mishak's handling of a misdemeanor criminal case. Specifically, Serazin accused Mishak of inappropriately asking a local judge who was not assigned to the case to issue a search warrant. (Doc. No. 53 at PageID#1301-1303; Mishak Depo. Exh. Q.) The incident was reported in a newspaper article in the Elyria Chronicle Telegram, which was titled "Prosecutor accused of search ruse."[2] (Doc. No. 53 at

---

[2] In addition, the Lorain County Bar Association conducted an ethics investigation regarding the incident, which was dismissed with a finding of no wrongdoing. (Doc. No. 53 at PageID# 1204; Mishak Depo., Exh. C.)

4

PageID#s 1201-1202; Mishak's Depo. Exh. B.) According to Mishak, Serazin failed to take into account various extenuating circumstances, including that the assigned judge was out of town when newly discovered information arose. In December 2013, Mishak was demoted from the Chief Prosecutor position.

Several other incidents occurred between 2014 and 2016 that generated friction between the two men. For example, in 2013 and 2014, Mishak made multiple requests to attend seminars related to drones, which Serazin denied. Serazin was "not pleased" because he felt the seminars were relevant only to Mishak's private drone business;[3] whereas, Mishak contended the seminars related to the effect of drones on municipal law. (Doc. No. 53 at PageID#1304; Mishak Depo. Exh. Q.) Later, in February 2015, Serazin became upset over Mishak's handling of a civil contempt matter. Serazin felt Mishak failed to promptly address the matter and was "surprised and embarrassed" when the judge assigned to the case called Serazin to ask why the City had not responded to a pending motion in that case. (Doc. No. 53 at PageID#1305;Mishak Depo. Exh. Q.) The following month, Serazin accused Mishak of improperly issuing a "legal opinion" to a local school board that concluded he (Mishak) was not precluded from serving on the board by virtue of the fact he was a prosecutor. (Doc. No. 53 at PageID#1306; Mishak Depo. at Exh. Q.) Mishak contends he merely wrote a "memo" about the issue that was intended only for Serazin's review and comment. (Doc. No. 51, Mishak Depo. at Tr. 98-101.) Serazin issued a written reprimand to Mishak in July 2015. (Doc. No. 49 at PageID# 872-874; Serazin Depo. Exh. 7.)

---

[3] In 2012, Mishak began a drone business called "Drone Works LLC." (Doc. No. 50; Mishak Depo. at Tr. 9-10.)

The relationship between Mishak and Serazin continued to deteriorate. In November 2015, Serazin intervened when Mishak planned to sign, file, and serve new charges in an income tax case on the day of a hearing set in that matter. (Doc. No. 53 at PageID#1307; Mishak Depo. Exh. Q.) Serazin felt Mishak's actions violated his office's policy against municipal prosecutors signing criminal charges. (*Id*.) Several months later, in March 2016, Serazin objected to Mishak's handling of a bond revocation hearing. (Doc. No. 53 at PageID#1308; Mishak Depo. Exh. Q.) In July 2016, Serazin accused Mishak of being involved in the unauthorized dyeing of the Ely Square water fountain in Elyria. (Doc. No. 49 at PageID#910-914; Serazin Depo. Exhs. 11, 12.)

However, the most serious problem that arose between Mishak and Serazin related to Mishak's billing for the Village of Grafton. Upon assuming office as the Elyria Law Director in 2012, Serazin allowed Mishak to serve as prosecutor for the Village of Grafton. Subsequently, in May 2014, Serazin issued a written policy that provided as follows:

> It was my understanding when I took this office that Elyria prosecutors sometimes prosecuted for other jurisdictions as long as it did not interfere with the full time service owed to the City of Elyria. The qualifying restriction seems to have been forgotten.

> While I am told that most of the time, the cases can be managed within the time frames allotted for the current dockets, when cases from other jurisdictions become time consuming or involved, then personal time must be used. Jury trials, discovery motions, and motions to suppress, all take research, preparation, witness interviews and court time. These must be handled on one's own time. This is the way it was explained to me. That is what other City employees do when they take part-time assignments such as secretary for the Planning Commission and Civil Service.

> Therefore, as of this date, I expect prosecutions for other jurisdictions, other than ordinary case management, shall only be done on your own time. If you need to use personal days or vacation time, I expect to see that reflected on your time sheets.

6

(Doc. No. 49 at PageID#940-941; Serazin Depo. at Exh. 19.)

In 2016, an administrative assistant at the Prosecutor's Office, Cathy Darmstadt, made an informal, verbal complaint to either Serazin or his Chief of Staff, Amanda Deery, that Mishak was "work[ing] on cases for Grafton all day long but not claim[ing] it on his time sheet." (Doc. No. 48; Darmstadt Depo. at Tr. 12, 15-16.) Serazin initiated an investigation. He obtained Mishak's billing records from the Village of Grafton, and asked Ms. Deery to review and compare them against Mishak's Elyria timesheets.[4] (Doc. No. 57; Deery Depo. at Tr. 135-139.) Ms. Deery concluded there were "some discrepancies." (*Id*. at Tr. 136.) Specifically, Ms. Deery testified as follows:

> Q:     What were these discrepancies?
>
> A:     That it appeared– that it looked as though there were claims that [Mishak] was doing Elyria work and being paid for Elyria work at the same time that he was doing in court– or in office Grafton work and being paid for both at the same time.

(*Id*. at Tr. 136-137.) In undertaking this review, Ms. Deery testified she did not investigate whether Mishak might have been working for Elyria outside of normal working hours on the days he was also billing time for Grafton. (*Id*. at Tr. 143-145.)

Serazin concluded Mishak had violated the May 2014 policy and engaged in improper billing practices or "double dipping." On July 22, 2016, Serazin met with Mishak and provided him a lengthy letter that raised a number of issues and was initially intended to be a termination

---

[4] Ms. Deery explained: "From what I recall, I looked at billing records from Grafton and there were dates and descriptions of the cases and the type of work that was done; I looked at the docket, the municipal court docket from those cases; and I looked at the time records from the City of Elyria that Matt had submitted." (*Id*. at Tr. 138.)

letter.[5]  (Doc. No. 49, Serazin Depo. at Tr. 199; Doc. No. 53 at PageID#1300-1310, Mishak

Depo. at Exh. Q.)  With regard to the Village of Grafton billing issue, Serazin's letter stated as

follows:

> Throughout 2014, 2015, and 2016 you ignored [the May 2014] policy and billed
> Grafton for times when you were supposed to be devoting time to the City of
> Elyria without using personal time. This is double dipping at its most basic level.
> It is having two municipalities compensate you for the same time. As near as I can
> tell, on only rare occasions did you use personal time while you handled Grafton
> matters. You even used City resources and staff to create your bills to Grafton and
> you received the checks at the courthouse. These actions are a serious breach of
> law department policy and possibly other laws.

> By way of example, I have attached your time sheet for the week of February 2016
> while you were preparing for a Grafton trial. It shows that you took no personal
> time even though your days were spent preparing for trial. I know this because I
> have your itemized bill to Grafton for that week. These records demonstrate that
> on February 24, 2016 while you were reporting a full eight hour day for the City
> of Elyria, you were billing Grafton for eight full hours. You billed Grafton for 15
> hours that week and never took a minute of personal time. In fact, you billed 56
> hours to the City of Grafton for a three month period in 2016 and you never used
> personal time off for any significant part of it. Staff confirmed that you were in the
> office but working on the Grafton case.

> I have attempted to understand how you might justify this conflict under any
> circumstances but I am unable to do so. The case files show that you were in our
> office and in court.  Your itemized bills to Grafton show activity that could only
> be accomplished at court.   In fact, over the course of the last 18 months you show
> over 260 hours of professional services billed to the Village of Grafton. Very little
> of this activity was out of court. And that doesn't even cover the last quarter. Since
> most of the billings are for at least an hour, our office policy required that you
> show this on your time sheet. You did not.

---

[5] The first page of Serazin's July 22, 2016 letter states that it is "Re: Termination of
employment."  (Doc. No. 49 at PageID#915; Serazin Depo. Exh. 13.)  On the last page of the
letter, Serazin initially wrote "Effectively immediately I am terminating your employment with
the City of Elyria."  (*Id*. at PageID#925.) As set forth *infra*, after Mishak advised him that his
ADHD-related limitations impacted his job performance and requested an accommodation,
Serazin crossed out the word "terminating" in the July 22, 2016 letter and wrote the word
"suspending" in its place.  (*Id*.)

This situation you created is far more serious than any other previous to it and it is the reason for your dismissal. It is not just your resistance to authority and poor work habits. It is a serious breach of trust. As you know, there is a lot of legal work in this City that needs to be done.  But there is a difference between creating a greater administrative load upon your boss and defying a policy meant to protect the City's legal resources, when I find that you aren't giving the City a full time effort but expecting a full time paycheck. And who knows how much time is being used for promotion of your drone business?

While it is one thing to lose confidence in an employee, it is quite another to find that he cheated the City.  I have no confidence in your ability to perform. I have no confidence that any measures I take will make you a more reliable employee.  I feel I cannot trust you to recognize the right thing to do.  The problems you create were persistent and serious. They were inconsistent with the duties of a prosecutor and of a city employee. But they were not as serious as using City time for a private contract.

(*Id*. at PageID#1309-1310.)

During this meeting, Mishak told Serazin that his ADHD attributed to the workplace issues and criticisms raised in the July 22, 2016 letter.  (Doc. No. 52, Mishak Depo. at Tr. 160-161; Doc. No. 49, Serazin Depo. at Tr. 199-200.)  Serazin then decided to suspend, rather than terminate, Mishak pending further information about his ADHD.  (Doc. No. 52, Mishak Depo. at Tr. 161.)

On July 28, 2016, Mishak submitted a letter to Serazin from his physician Mark D. Bej, M.D.  (Doc. No. 53 at PageID# 1316; Mishak Depo. Exh. S).  This letter provided as follows:

Dear Atty Serazin:

Atty. Matthew Mishak has been under my care for approximately ten years for Attention Deficit Hyperactivity  Disorder (ADHD). As you  may know, this disorder, whose physiological basis has recently be[en] elucidated, results in difficulty sustaining attention, hyperfocusing, often to a fault over  irrelevant details, intolerance for routine, difficulty with task-switching, poor time management, and impulsiveness. Accepting criticism and guidance from others is also a common feature.

Mr. Mishak's ADHD is under treatment, both pharmacologically    and

9

behaviorally (coping/adaptive skills), in keeping with the most recent available research and treatment guidelines. Despite this, he reports, as do many patients with this disorder, incomplete resolution of symptoms. This has resulted considerable anxiety, further limiting his ability to do his job. Mr. Mishak has also reported feelings of being overwhelmed and, at times, hopeless and that the symptomology of his ADHD could not be mitigated by treatment and medication. I have provided him with additional consultative sources in an attempt to maximize his treatment. I do expect, however, that his ability to learn from his mistakes and accept guidance will be a lifelong struggle. Such reactions are a consequence of the ADHD and not a defect in character, honesty, integrity, or commitment to work responsibilities.

I am requesting hereby that reasonable accommodations be made for Atty. Mishak in his current position. This would include, among others: frequent two-way communication with an understanding that repetition and review of the needs and demands of a given assigned task will often be necessary; the setting of mutually acceptable deadlines, including interim deadlines; an allowance to take breaks from sedentary work as necessary to clear and focus the mind; and the expectation that more time may be required by this employee for a given task than might be expected for another otherwise similarly qualified employee. It would likely also
be advisable for Mr. Mishak to undertake a period of medical leave of perhaps 6-8 weeks, if so recommended by the consultant to whom he has been referred, to allow for more intensive adaptive therapy.

(*Id.*)

After conducting "some research on the ADHD," Serazin concluded that "with respect to the issue involving Grafton, that did not play a role in that." (Doc. No. 49; Serazin Depo. at Tr. 202.) On August 2, 2016, Serazin placed in the mail a letter to Mishak terminating his employment "effective immediately." (Doc. No. 49 at PageID# 930; Serazin Depo. at Tr. 205-206, Exh. 16.)

Two days later, on August 4, 2016, Serazin telephoned Lisa Roberson, a reporter for the Elyria Chronicle-Telegram newspaper. (Doc. No. 49; Serazin Depo. at Tr. 206, 208.) At that time, he told Ms. Roberson that Mishak had been terminated and provided a copy of the July 22, 2016 letter as well as the exhibits referenced in that letter. (*Id.* at Tr. 208-210.) When asked

why he contacted Ms. Roberson, Serazin explained: "I felt that it was a news story and that it

was in the best interest of the public that they know." (*Id.* at Tr. 206.)

On August 5, 2016, the Elyria Chronicle-Telegram published an article written by Ms.

Roberson, entitled "Elyria fires prosecutor; 'double dipping' alleged." (Doc. No. 49 at PageID#

931-936; Serazin Depo. Exh. 17.) In relevant part, this article states as follows:

> ELYRIA - Law Director Scott Serazin fired Tuesday a criminal prosecutor over
> allegations he misused city time by working for Grafton while also working in
> Elyria.
>
> Matt Mishak also was at the center of an investigation over who dyed the water in
> the Ely Square water fountain. However, Serazin called the fountain episode,
> which happened the weekend of last month's annual James A. Kerstetter Memorial
> 5K and Family Walk, small compared to the allegations Mishak submitted timecards
> to both Elyria and Grafton for legal work over the same time period.
>
> Mishak started working for Elyria in January 2012 as chief criminal prosecutor. He
> was demoted to criminal prosecutor in December 2013. He has served as Grafton
> prosecutor since March 2012.
>
> "It's really sad it came to this, but I want to be clear this has nothing to do about the
> fountain," Serazin said. "I had a problem with this attorney disregarding a policy
> put in place in May 2014 that clearly states when my people represent two
> jurisdictions, all the work has to be documented so any work not done for Elyria is
> done off the clock."
>
> Serazin said he spoke to the county prosecutor and will have an outside agency
> investigate the claims against Mishak. The city will hold off on issuing any
> separation pay to Mishak from accumulated unused vacation and personal time until
> it's determined if Mishak owes restitution to the city, Serazin said.
>
> "But while this is going on, I don't think this is good for him to be in the city's
> employment," he said.
>
> Serazin suspended Mishak on July 22 with the termination occurring Tuesday.
> When reached Thursday, Mishak said he did not know he was fired until reached by
> a reporter. Serazin said he mailed a termination letter to Mishak's Elyria home
> Tuesday and sent a copy to his attorney.
>
> * * *

In a termination letter mailed Aug. 2, Serazin called Mishak's conduct "unacceptable."

"Nothing in your employment history justifies the misuse of city time to enrich yourself," the letter reads. "As you are aware, this matter is under investigation and I cannot retain you on my staff. Your conduct has posed severe ethical and, possibly, criminal conduct that is unacceptable to this office."

* * *

**'Double dipping'**

Serazin said he has preliminarily looked at the timecards and compensation records of Elyria and Grafton, but without a full investigation cannot accurately state how many hours of overlap exist, if any.

However, he said Mishak rarely used personal time while handling Grafton matters, used city resources and staff to create bills to Grafton and received the checks from Grafton at the Elyria Municipal Courthouse.

"This is double dipping at its most basic level," Serazin wrote to Mishak in a July 22 suspension later. "It is having two municipalities compensate you for the same time."

Serazin gave an example of the week of Feb. 22. Serazin said Mishak billed Grafton for 15 hours of work and took zero hours in personal time. He said Mishak billed 56 hours to Grafton for a three-month period this year and never used personal time. Over the last 18 months, Mishak billed 260 hours to Grafton, but Serazin could not say if all the hours overlapped in Elyria.

**Other incidents**

The misuse of city time is not the only issue Serazin has had with Mishak.

Mishak's July 22 suspension letter is an 11-page missive that details several incidents dating to July 2013.

Serazin said he put Mishak in charge of the Law Department's Criminal Division although Mishak had little experience in the area. Almost from the beginning, Mishak proved to be more of a burden that a benefit, Serazin said.

In the lengthy letter, Serazin said Mishak resisted advice, insisted he knew better and disregarded policies.

"This is especially true when the restrictions impeded your economic, business or political ambitions," the letter read.

Serazin said city work took a back seat to Mishak's work in Grafton as well as a drone business he operates in Vermilion.* * *

The documents outline several incidents over the course of Mishak's employment that Serazin took issue with including Mishak approaching two different judges in July 2013 for the same search warrant in a domestic violence case that resulted in the judges' withdrawal from the case, Serazin requesting a special prosecutor, and the defendant being acquitted.

After the case, Serazin demoted Mishak from chief criminal prosecutor to criminal prosecutor.

Other outlined incidents included requesting personal time off that created staffing issues (February to April 2015); misidentifying his drone business as a corporation (August 2015); trying to get the city to pay for drone seminars by hiding the true nature of the seminars (2013-2014); being petulant and uninterested at staff meetings (April 2014); not filing the appropriate notices in a civil case (February-March 2015); and seeking a position on the Elyria school board and issuing a legal opinion that it would not be a conflict with his city job, although the Ohio Revised Code outlined such a conflict.

Serazin almost fired Mishak for the latter, which took place in March 2015, for attempting to use his position to improperly influence other office holders.

"I must admit that I was wondering at that time what else you were doing that you were keeping from me," Serazin wrote. "I wish I had released you at that point."

Mishak continued to work for the city and Mishak's misbehavior as characterized by Serazin continued until he was terminated earlier this week.

(*Id*.) According to Mishak, he did not become aware of the fact that he had been terminated until he was contacted by Ms. Roberson on August 4, 2016 for comment. (Doc. No. 52; Mishak Depo. at Tr. 172.)

Serazin's Chief of Staff, Ms. Deery, testified that, after the above article was published, Serazin instructed her to contact the Lorain County Bar Association because he "wanted the bar association ethics committee to be aware of the contents of the [July 22, 2016] letter that he had

sent to [Mishak] outlining the reasons that he was being let go." (Doc. No. 57; Deery Depo. at Tr. 125-126.) The Lorain County Bar Association later sent, via email, a link to Ms. Roberson's August 5, 2016 newspaper article to the entire bar membership. (*Id.*)

Serazin subsequently referred the matter to the Lorain County Prosecutor's Office, which declined to pursue the matter. (Doc. No. 49; Serazin Depo. at Tr. 234-235.) The Lorain County Prosecutor referred it to the Lorain County Sheriff's office, which also declined to investigate. (*Id.*) The Lorain County Sheriff's Office then engaged the Ohio State Auditor, which undertook a preliminary investigation. (*Id.* at Tr. 235-236; Doc. No. 49 at PageID# 942, Serazin Depo. Exh. 20.)

On July 20, 2017, the Special Audit Task Force of the Ohio Auditor issued a recommendation that the investigation be closed without further action, as follows:

**Work Performed and Results**

We obtained the City of Elyria Law Department interoffice memo dated May 1, 2014 regarding representation of other jurisdictions, the Village of Grafton prosecutor fees payments and supporting documentation, including the case logs and court dockets, as well as the City of Elyria payroll supporting documentation for wages paid to Mr. Mishak for the review period of May 1, 2014 through August 2, 2016.

Our examination identified 5 instances out of 414 Village of Grafton case log items billed in which Mr. Mishak was required to request and use leave time with the City of Elyria in order to conduct a Village of Grafton case. Mr. Mishak did not use leave for 3 out of the 5 billed items for a total of 9 hours which equated to $296.

On June 12, 2017, Investigator, Kevin Monnolly, and Senior Audit Manager, Michelle Dopp, met with Mr. Mishak and his legal representatives to discuss the case. Mr. Mishak indicated that he was a salaried employee of the City who was encouraged by City Law Director, Scott Serazon, to accept the position of Prosecutor for the Village of Grafton in addition to his duties as a City Prosecutor. Mr. Mishak indicated that he worked additional hours for the City beyond his regularly scheduled salaried hours in order to adequately perform his duties as City Prosecutor and Village of Grafton Prosecutor.

Based upon the interview information denoted above, we further examined Mr. Mishak's hours worked in addition to his regular salaried hours schedule for the respective months. Electronic Identification was required to enter the City of Elyria municipal building; however, it was not required to leave the building. As such, based on the available information, we identified an additional 52.55 hours in which the log reports suggested Mr. Mishak was present at the City municipal building prior to his normal start time. Although, we were unable to confirm the time Mr. Mishak left the building, the available information did appear to corroborate Mr. Mishak's statement.

**Recommendation**

Based on our examination, we did not take exception with the 3 Village of Grafton billed items totaling 9 hours and $296. As a result, we did not identify misuse or theft of City time.

As a result, we recommend this preliminary examination be closed without further action.

(Doc. No. 49 at PageID#942; Serazin Depo. Exh. 20.) On November 28, 2017, a Public Integrity Attorney with the Ohio Auditor's Office advised Mishak that "[a]fter a review of the evidence, including the special audit, I have declined to prosecute the matter." (Doc. No. 53 at PageID#1320; Mishak Depo. Exh. W).

Meanwhile, Mishak applied for unemployment compensation. (Doc. No. 52; Mishak Depo. at Tr. 194.) The claim was denied by the Unemployment Compensation Review Commission ("UCRC"), and Mishak appealed to Lorain County Court of Common Pleas (the "state trial court"). (*Id*. at Tr. 194-195.) On July 13, 2017, the state trial court affirmed the decision of the UCRC that Mishak was discharged for just cause. (Doc. No. 53 at PageID#1321-1323; Mishak Depo. Exh. X.)

### III.  Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides in relevant part that:

A party may move for summary judgment, identifying each claim or defense—or

15

the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R. Civ. P. 56(a). Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may...consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed. R. Civ. P. 56(c)). *See also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *See Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *United States v. Hodges X–Ray, Inc.*, 759 F.2d

16

557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox,* 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc*., 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50 (citation omitted).

## IV.  Analysis

### A.  Federal Claims

#### 1.  Malicious Prosecution (Count Three)

In Count Three of the Second Amended Complaint, Mishak alleges a federal malicious prosecution claim pursuant to 42 U.S.C. § 1983. (Doc. No. 36 at ¶¶ 59-70.) Therein, he claims Serazin "showed malice in instituting or continuing the prosecution against Mishak by alleging to the Lorain County Prosecutor, Lorain County Sheriff, and the Auditor for the State of Ohio that Mishak had committed criminal violations." (*Id*. at ¶ 64.) Mishak asserts Serazin lacked probable cause to initiate this prosecution and claims none of the entities noted above found he committed theft in office. (*Id*. at ¶¶ 65, 66.) He further alleges that "Serazin abused the power of his public office and violated the Ohio Rules of Professional Conduct by making

extrajudicial comments to the press that had a substantial likelihood of heightening public condemnation of Mishak."  (*Id*. at ¶ 67.)  Mishak claims "Serazin's conduct deprived [him] of procedural due process guaranteed under Federal Law and/or the Constitution of the United States under the 5th and 14th Amendments to the United States Constitution."  (*Id*. at ¶¶ 62, 67.) As a result of Serazin's conduct, Mishak asserts he "was obliged to defend himself and to expend money and time in his defense; that he lost time previously devoted to his professional business, from the ordinary pursuits in his life and home, and that the qualify of his life was diminished by it, all to his great damage."  (*Id*. at ¶ 69.)

Defendants argue they are entitled to summary judgment in their favor with respect to this claim for several reasons.  (Doc. No. 46 at 22-26.)  First, Defendants argue the Sixth Circuit has never addressed whether a plaintiff can state a viable malicious prosecution claim under the Fourteenth Amendment and, further, "has never provided any construct or guidance regarding how a malicious prosecution claim for an alleged procedural due process claim under the Fifth or Fourteenth Amendments could or should be legally analyzed."  (*Id.* at 23.)  On this basis alone, Defendants maintain Mishak's Fourteenth Amendment malicious prosecution claim fails as a matter of law.  (*Id*.)  Even assuming this claim is cognizable, Defendants assert they are entitled to judgment in their favor because Mishak "has not presented any evidence that he was entitled to procedural due process under the circumstances or that his procedural due process rights were violated."  (*Id*. at 24.)

Defendants then argue Serazin is entitled to qualified immunity because Mishak "has not established that his procedural due process rights . . . were implicated or violated under the

circumstances."[6] (*Id.* at 24.)  They further maintain qualified immunity applies because "there is no Sixth Circuit law that would clearly establish beyond debate to a reasonable official in Mr. Serazin's position that his referral of the unethical billing to the Lorain County Prosecutor's Office could violate Plaintiff's Fifth and/or Fourteenth Amendment procedural due process rights."  (*Id.* at 25.)

Mishak argues summary judgment should be denied because Serazin initiated a criminal investigation regarding his alleged "double dipping" without probable cause, and the investigation was terminated in Mishak's favor.  (Doc. No. 60 at 29-31.)  He maintains he was denied a liberty interest as a result of Serazin's actions, explaining his "reputation was impugned, and he was not able to publicly speak about the issue during the pendency of the criminal matter, thus being denied the liberty interest in free speech to clear his name."  (*Id.* at 30.)  Mishak further asserts he has a liberty interest in his ability to work.  (*Id.* at 30.)  He argues that, as a result of Serazin's actions, he was prohibited from receiving court appointments in the Elyria Municipal Court during the pendency of the investigation against him and, further, that the Village of Grafton ceased allowing him to prosecute on the Village's behalf.  (*Id.*)

Lastly, Mishak argues Serazin is not entitled to qualified immunity with respect to this claim because "a public employee's liberty interest in his reputation and employment is a

---

[6]Defendants also argue they are entitled to summary judgment in their favor with respect to Mishak's federal malicious prosecution claim against the City of Elyria under *Monell v. Dept. of Social Services,* 436 U.S. 658 (1978).  (Doc. No. 46 at 25-26.)  Mishak fails to address this issue or otherwise offer any reasoned argument in support of this claim.  Accordingly, and in light of the lack of opposition, summary judgment is granted to Defendants with respect to Mishak's federal malicious prosecution claim against Defendant City of Elyria.

clearly established constitutional right for purposes of determining whether qualified immunity applies." (*Id*. at 31.) He asserts his "reputation was impugned due to Serazin's statements to the press for widespread publication" and, as a result, his "reputation was tarnished and he was deprived of further work opportunities, such as appointments to the Elyria Municipal Court and his prosecuting position at Grafton." (*Id*.) Mishak argues a reasonable person in Serazin's position would know that false accusations of public theft and corruption would have this effect. (*Id*.)

In their Reply Brief, Defendants insist that "the federal malicious prosecution [claim] fails as a matter of law when it does not invoke Fourth Amendment jurisprudence." (Doc. No. 63 at 25.) In addition, Defendants object to any attempt by Mishak to expand this claim to be premised upon either the First Amendment or substantive due process, arguing Mishak failed to raise to these constitutional rights as basis for this claim. (*Id.*)

In his Sur-Reply, Mishak argues the Second Amended Complaint included the denial of his substantive due process rights as a basis for his federal malicious claim because it alleged "he was denied his rights under the U.S. Constitution and nowhere does he exclude substantive due process rights from those claims." (Doc. No. 65 at 7.)

To maintain a claim under Section 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*,

443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Baker*, 443 U.S. at 140.

Here, Mishak asserts a Section 1983 claim for malicious prosecution based on the alleged violation of his procedural due process[7] rights under the Fourteenth Amendment. The law regarding whether a malicious prosecution claim can be based on an alleged violation of the Fourteenth Amendment remains unsettled in this Circuit. As this Court explained in its previous Opinion & Order (Doc. No. 35), "[t]raditionally, the federal courts have grouped continued detention without probable cause with several other potential injuries under the umbrella of a 'malicious prosecution' claim, actionable under § 1983 as a violation of due process." *Gregory v. City of Louisville*, 444 F.3d 725, 748 (6th Cir.2006) (citing *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). "The courts took this approach, in part, because of the wide range of potential injuries a wrongful prosecution could generate, from an unlawful seizure to a misuse of actual court process," noting "[t]he due process clause was more amenable to such variation." *Id.*

This approach changed, however, after the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In that case, the plaintiff was

---

[7] While Mishak references substantive due process and First Amendment principles in his summary judgment briefing, the Court agrees with Defendants that Mishak failed to adequately plead either a substantive due process or First Amendment violation as the basis of his federal malicious prosecution claim. As noted *supra*, the Second Amended Complaint specifically and repeatedly identifies *procedural due process* as the basis for Mishak's federal malicious prosecution claim. The Second Amended Complaint makes no mention of substantive due process or the First Amendment nor does it otherwise appear to plead the elements of such claims. Accordingly, the Court finds Mishak's federal malicious prosecution claim is limited to an alleged procedural due process violation under the Fourteenth Amendment.

arrested for "sale of a substance which looked like an illegal drug." *Id*. at 268. Plaintiff surrendered and was released after posting bond, one of the conditions of which was that he was not allowed to leave the State without permission of the court. *Id*. The state court found probable cause to bind plaintiff over for trial, but later dismissed the charge on the ground it did not state an offense under state law. *Id*. at 269. Plaintiff then filed a §1983 action in federal court, alleging defendant "deprived him of substantive due process under the Fourteenth Amendment – his 'liberty interest' – to be free from criminal prosecution except upon probable cause." *Id*. The district court granted defendant's motion to dismiss, and the Seventh Circuit affirmed. *Id*.

On appeal, the Supreme Court found "it is the Fourth Amendment, and not substantive due process, under which petitioner Albright's claim must be judged." *Id*. at 271. The Court noted "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Id*. at 273 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). The Supreme Court applied that principle to plaintiff's case, noting "the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecution." *Id*. at 274. Because plaintiff's "surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment," the Court found plaintiff's claim should not be addressed under substantive due process principles. *Id*. at 275. As the plaintiff had not petitioned for *certiorari* under the Fourth Amendment, however, the Supreme Court declined to address whether plaintiff's claim would succeed under the Fourth Amendment. *Id*.

The Sixth Circuit grappled with the implications of *Albright* in a series of cases. *See e.g., Spurlock v. Satterfield*, 167 F.3d 995, 1004–06 (6th Cir.1999)); *Frantz v. Village of Bradford*, 245 F.3d 869, 875-877 (6th Cir. 2001); *Darrah* v. City of Oak Park, 255 F.3d 301, 308 (6th Cir. 2001); *Thacker v. City of Columbus*, 328 F.3d 244, 258-259 (6th Cir. 2003). In *Gregory*, *supra*, the Sixth Circuit "interpreted *Albright* as requiring that traditional claims for 'malicious prosecution' be pursued and treated as Fourth Amendment violations **when the gravamen of the complaint is continued detention without probable case.**" *Id.* at 748 (emphasis added). In a footnote, however, the Court explained as follows:

> **In the aftermath of *Albright*, this Court has not yet been faced with a § 1983 claim for an injury formerly treated under the "malicious prosecution" umbrella which does not allege, at heart, a Fourth Amendment injury. We do not decide today whether some claims formerly brought under the "malicious prosecution" umbrella might allege an injury distinct from Fourth Amendment protections—that is, an injury distinct from the type alleged in *Albright*—and survive as a due process violation in the post-*Albright* world.** For a discussion of such potential claims, see John T. Ryan, Note, Malicious Prosecution Claims Under Section 1983: Do Citizens Have Federal Recourse?, 64 Geo. Wash. L.Rev. 776 (1996).
>
> We acknowledge that some of our sister circuit courts of appeals have addressed the parameters of a "malicious prosecution" claim since *Albright*. **Until presented with factual circumstances meriting an analysis beyond the Fourth Amendment, however, <u>we decline to reach the question about whether a non-Fourth Amendment "malicious prosecution" cause of action survives under § 1983 after *Albright*</u>.**

*Gregory*, 444 F.3d at fn 10 (emphasis added).

Subsequent Sixth Circuit cases have not explicitly addressed this issue. In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) and *Noonan v. County of Oakland*, 683 Fed. Appx. 455 (6th Cir. 2017), the Sixth Circuit did not directly address the cognizability of such a "non-Fourth Amendment malicious prosecution cause of action;" i.e., a cause of action in which a plaintiff

alleges malicious prosecution based on an injury distinct from that associated with detention without probable cause.[8]  Moreover, while several Sixth Circuit cases have cited *Albright* generally for the proposition that a malicious prosecution claim is not available under the Fourteenth Amendment, none of those cases expressly considered a malicious prosecution claim "which does not allege, at heart, a Fourth Amendment injury."  *Gregory*, 444 F.3d at fn 10.  *See e.g., Jolley v. Harvell*, 254 Fed. Appx. 483 (6th Cir. Nov. 13, 2007) (addressing malicious prosecution claim under the Fourth Amendment where plaintiff was arrested for DUI); *Jackson v. County of Washtenaw*, 310 Fed. Appx. 6 (6th Cir. Feb. 4, 2009) (finding plaintiff "must pursue relief for an alleged violation of his constitutional right against continued detention without probable cause under the Fourth Amendment").[9]

Thus, while the Sixth Circuit has not affirmatively decided that a malicious prosecution claim premised on the Fourteenth Amendment is a viable claim, it has not affirmatively decided that it is not.  To the contrary, in *Gregory*, that court expressly left open the possibility that a non-Fourth Amendment malicious prosecution claim might exist in a "post-*Albright* world."  *Gregory*, 444 F.3d at fn 10.  Regrettably, neither Mishak or Defendants offer any meaningful

---

[8]  In *Noonan*, it is not clear whether the plaintiff pled his malicious prosecution claim under the Fourth Amendment, the Fourteenth Amendment, or both.  In any event, the Sixth Circuit did not directly address the issue of the cognizability of a malicious prosecution claim under the Fourteenth Amendment.

[9]  Although not cited by either party, the Court notes that one unreported Sixth Circuit decision rejected a malicious prosecution claim based on alleged due process violations under the Fourteenth Amendment.  *See BPNC, Inc. v. Taft*, 2005 WL 1993426 (Aug. 16, 2005).  However, this case pre-dates *Gregory* (a reported decision) which leaves open the possibility of whether a non-Fourth Amendment malicious prosecution cause of action survives under § 1983 after *Albright*.

argument (based on either *Albright* or authority from other federal Circuit Courts of Appeals) regarding whether a non-Fourth Amendment malicious prosecution claim is a viable legal claim under the circumstances presented. Nor do the parties herein articulate what the legal framework should be for analyzing such a claim, in the event the Court were to recognize it.[10]

Based on the Court's own research, it appears the Circuit Courts of Appeals are divided on the issue of whether a federal malicious prosecution claim may be premised on an alleged due process violation under the Fourteenth Amendment. Some Circuits (including the First, Second, and Tenth) have concluded that a federal malicious prosecution claim must be based on the Fourth Amendment, and cannot be grounded on either the procedural or substantive prongs of the Due Process Clause. *See, e.g.*, *Rodriguez-Mateo v. Fuentes-Agostini*, 66 Fed. Appx. 212, 213 (1st Cir. 2003) ("Our case law establishes that appellant had no viable claim of malicious prosecution grounded on either the procedural or substantive prongs of the Due Process Clause."); *Nieves v. McSweeney*, 241 F.3d 46, 53-54 (1st Cir.2001) ("It is perfectly clear that the Due Process Clause cannot serve to ground the appellants' federal malicious prosecution claim. No procedural due process claim can flourish in this soil because Massachusetts provides an adequate remedy for malicious prosecution. Similarly, a plurality of the Supreme Court has concluded that 'substantive due process may not furnish the constitutional peg on which to hang' a federal malicious prosecution tort."); *Washington v. County of Rockland*, 373 F.3d 310, 316

_____

[10] In his Brief in Opposition, Mishak frames his argument in the context of the elements of a malicious prosecution claim as set forth in *Coleman v. Cuyahoga County Board of Comm'rs*, 2011 U.S. Dist. Lexis 24703 (N.D. Ohio Mar. 9, 2011). (Doc. No. 60 at 29.) However, *Coleman* does not address the Fourteenth Amendment as a potential basis for a malicious prosecution claim and, therefore, does not consider the elements of such a claim where it is premised on a procedural due process violation.

(2nd Cir. 2004) (finding federal malicious prosecution claim must be based on Fourth Amendment violation); *Fisher v. Koopman*, 693 Fed. Appx. 740 (10th Cir. May 23, 2017) ("[A] plaintiff must allege a violation of the Fourth Amendment in order to proceed on a theory of § 1983 malicious prosecution") (quoting *Becker v. Kroll,* 494 F.3d 904, 919 (10th Cir. 2007)); *Becker,* 494 F.3d at 918-919 ("We think the unavoidable construction of *Albright* is that no § 1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment. And although the plaintiff in *Albright* did not raise a procedural due process claim, 510 U.S. at 271, 114 S.Ct. 807, we find *Albright's* reasoning regarding substantive due process equally persuasive with regard to the Fourteenth Amendment's procedural component.")

Others (including the Third, Fifth, and Ninth) have interpreted federal malicious prosecution claims more broadly, allowing such claims to proceed based on the Due Process Clause under certain circumstances. *See, e.g.*, *Torres v. McLaughlin*, 163 F.3d 169, 172-173 (3rd Cir. 1998) ("Contrary to the interpretation given by other courts of appeals, we do not read *Albright* to hold that a malicious prosecution claim can only be based on a Fourth Amendment violation. Accordingly, a section 1983 malicious prosecution claim may also include police conduct that violates the Fourth Amendment, the procedural due process clause, or other explicit text of the Constitution."); *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003) (analyzing claims of knowing use of manufactured evidence and perjured testimony at trial as violations of due process sufficient to support a § 1983 malicious prosecution claim); *Awadby v. City of Adelanto*, 368 F.3d 1062, 1070 (9th Cir. 2004) (finding district court erred in ruling, as a matter of law, that First and Fourteenth Amendment injuries cannot provide a basis for asserting a

malicious prosecution claim under § 1983 and explaining "[w]e do not interpret *Albright* as establishing a rule that Fourth Amendment violations are the only proper grounds for malicious prosecution claims under § 1983." )[11]

Several Circuits, including the Seventh, have explained that a federal malicious prosecution claim under the Fourteenth Amendment may only exist where state law does not provide an adequate alternative remedy. *See Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013) ("We've held that a federal claim for malicious prosecution is actionable only if the state fails to provide an adequate alternative, whether called a claim of malicious prosecution or something else. . . . For the elements of a federal malicious prosecution claim are the same whether the claim is based on the Fourth Amendment or on the due process clause of the Fourteenth Amendment.")[12]

---

[11] It is not entirely clear but it appears the Eighth Circuit has left open the possibility of a § 1983 claim based on the Fourteenth Amendment under certain circumstances. *See Stewart v. Wagner*, 836 F.3d 978, 984-984 (8th Cir. 2016) ("Therefore, a § 1983 plaintiff's claim that he was arrested or prosecuted without probable cause, even if labeled a claim of malicious prosecution, 'must be judged' under the Fourth Amendment, not substantive due process. [citation omitted]. We recognized in *Moran* [*v. Clarke*, 296 F.3d 638 (8th Cir. 2002)] that additional considerations in a particular case may trigger substantive due process protection, like the impact of 'falsely-created evidence and other defamatory actions' on a public employee plaintiff's career, and the equal protection interest in not being investigated or punished on account of race, that were present in that case. 296 F.3d at 645. But here, Stewart was not a public employee, race was not an issue, and the alleged fabricated evidence was only used in a probable cause statement. Thus, the general rule in *[Albright]* applies, and the district court committed an error of law in not judging the actions of Selby and Wagner under the Fourth Amendment."). *But see Harrington v. City of Council Bluffs*, 678 F.3d 676, 679, fn 4 (8th Cir. 2012) (finding "[i]f malicious prosecution is a constitutional violation at all, it probably arises under the Fourth Amendment" but noting that "[t]hough *Albright* may leave open the possibility of a procedural due process claim, that claim is not available here because Iowa 'provides a tort remedy for malicious prosecution.'")

[12] The United States Supreme Court has not explicitly considered whether a federal malicious prosecution claim may proceed under the Fourth and/or Fourteenth Amendments.

In light of the above uncertainty, the Court is concerned by the failure of the parties in the instant case to meaningfully analyze and argue the legal issues presented by this claim. However, under the circumstances presented, the Court need not decide the larger issue of whether a federal malicious prosecution claim can be premised on an alleged procedural due process violation under the Fourteenth Amendment. Assuming, *arguendo*, this Court were to find that a federal malicious prosecution claim based on an alleged procedural due process violation under the Fourteenth Amendment constitutes a viable claim as a matter of law, Defendants herein would nonetheless be entitled to summary judgment with respect to such a claim for the reasons set forth below.

In the absence of any meaningful input from the parties, the Court finds persuasive the reasoning of the Tenth Circuit. While that Circuit has not expressly determined that a federal malicious prosecution claim premised on the Fourteenth Amendment is a viable claim, it considered the possible contours of such a claim in *Becker, supra*, as follows:

> Nevertheless, we acknowledge that the Fourteenth Amendment's protections encompass harms to liberty outside the scope of the Fourth Amendment's concern with freedom from restraint, such as harm to reputation resulting in some tangible injury, from which a plaintiff in Becker's circumstances may indeed suffer. *See, e.g., Michael H. v. Gerald D*., 491 U.S. 110, 121, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989); *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). But even if Becker did suffer such injuries other than physical restraint, procedural due process only protects against them by providing an adequate post-deprivation hearing in which the injured party may vindicate these interests. *See Constantineau*, 400 U.S. at 436–37, 91 S.Ct. 507.

_____

However, in a recent dissent, Justice Alito remarked that, in his view, the Fourth Amendment "cannot house any such claim" and "if a malicious prosecution claim may be brought under the Constitution, it must find some other home, presumably the Due Process Clause*." Manuel v. City of Joliet, Ill*., 137 S.Ct. 911, 924 (2017).

In this case, state tort remedies meet the procedural requirements of the Due Process Clause. The Supreme Court has held that where pre-deprivation remedies cannot anticipate and prevent a state actor's wrongful act, post-deprivation state tort remedies are adequate to satisfy due process requirements. *Parratt v. Taylor*, 451 U.S. 527, 535–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (holding state could not anticipate employee's negligence); *see also Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (extending *Parratt's* logic to intentional torts). **In his *Albright* concurrence, Justice Kennedy argued that in § 1983 malicious prosecution cases, a "state actor's random and unauthorized deprivation of [Fourteenth Amendment due process interests] cannot be challenged under 42 U.S.C. § 1983 so long as the State provides an adequate post deprivation remedy." 510 U.S. at 284, 114 S.Ct. 807 (Kennedy, J., concurring). As he explained, "In the ordinary case where an injury has been caused ... by a random and unauthorized act that can be remedied by state law, there is no basis for intervention under § 1983, at least in a suit based on 'the Due Process Clause of the Fourteenth Amendment.' "** *Id.* at 285, 114 S.Ct. 807 (quoting *Parratt,* 451 U.S. at 536, 101 S.Ct. 1908); *see also Nieves*, 241 F.3d at 53 (rejecting procedural due process claim under § 1983 for malicious prosecution because state provides adequate tort remedy); *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir.2001) (holding state tort remedy "knocks out any constitutional tort of malicious prosecution" based on due process). We agree with this analysis.

Becker does not suggest what pre-deprivation process could have anticipated the malfeasance of the . . . investigators and protected her from an abusive investigation, and we decline to supply procedural requirements in addition to already-established criminal procedure under the Constitution and state law. Utah tort law provides an adequate post deprivation remedy to protect Becker's non-Fourth Amendment liberty interests. *See Gilbert v. Ince*, 981 P.2d 841 (Utah 1999) (recognizing state causes of action for malicious prosecution and abuse of process); *see generally* 2 Dan B. Dobbs, The Law of Torts § 438 (2001) (describing damages for malicious prosecution or abuse of process). Accordingly, in this case, where Becker was never seized in violation of the Fourth Amendment, Utah tort law provides an adequate procedural due process remedy for any injuries not cognizable as a Fourth Amendment seizure.

*Becker*, 494 F.3d at 919-920 (emphasis added).

Thus, even assuming Mishak's malicious prosecution claim based on the Fourteenth

Amendment is a viable claim (and assuming further that Mishak properly pled a cognizable

liberty interest), Mishak would be required to plead and prove that Serazin's conduct constituted

a "random and unauthorized act" and, further, that the State of Ohio does not provide an independent and adequate alternative state court remedy.[13] *See also Nieves*, 241 F.3d at 53-54 ("No procedural due process claim can flourish in this soil because Massachusetts provides an adequate remedy for malicious prosecution"); *Julian*, 732 F.3d at 845 ("We've held that a federal claim for malicious prosecution is actionable only if the state fails to provide an adequate alternative"); *Harrington,* 678 F.3d at 679 ("Though *Albright* may leave open the possibility of a procedural due process claim, that claim is not available here because Iowa 'provides a tort remedy for malicious prosecution.'").  *See generally Wedgewood Ltd. Partnership, I v. Township of Liberty, Ohio*, 610 F.3d 340, 349-350 (6th Cir. 2010) (explaining plaintiff will prevail on a procedural due process claim if it "establishes that the [defendant] deprived it of a liberty or property interest 'pursuant to a random and unauthorized act' and available state remedies would not adequately compensate it for the loss that it suffered); *Barnes v. City of Cleveland*, 2015 WL 5675099 (N.D. Ohio Sept. 25, 2015) ("In the context of an alleged due process violation, a plaintiff may resort to a § 1983 action for relief only where he can demonstrate that the constitutional right was not adequately vindicated by state-law post-deprivation remedies") (citing *Parratt*, *supra* and *Wilson v. Beebe*, 770 F.2d 578 (6th Cir.1985) (*en banc*) (extending *Parratt* to deprivations of liberty)).

Mishak has failed entirely to do so.  The Second Amended Complaint does not allege that

---

[13] Although Mishak fails to plead this element, based on the tenor of his summary judgment briefing, the Court assumes Mishak's position is that Serazin's conduct constituted a "random and unauthorized act" for purposes of his procedural due process malicious prosecution claim.  In any event, Mishak also fails to plead (or argue) the other possible basis for this claim; i.e. that he was deprived of a liberty or property interest as a result of an established state procedure which itself violates procedural due process rights. *See Wedgewood Ltd. Partnership*, 610 F.3d at 349-350.

Mishak was deprived of a liberty or property interest 'pursuant to a random and unauthorized act' of Serazin *and* that available state remedies would not adequately compensate him for the loss that he suffered. Indeed, Mishak does not even argue that the Second Amended Complaint sets forth any allegations relating to the lack of, or alleged inadequacy of, state court remedies. Mishak also fails entirely to address this issue at any point in his summary judgment briefing. Simply put, Mishak has not "pled or proved" this element of a procedural due process claim.[14]

This is problematic because Ohio tort law provides a cause of a number of causes of action that could arguably compensate Mishak for the losses he suffered, including state law claims for malicious prosecution and defamation. Mishak has neither argued nor demonstrated that state court remedies are inadequate or unavailable. Pursuant to the authority noted above, the existence of an available independent and adequate state remedy precludes Mishak's procedural due process malicious prosecution claim. The only exception is when the plaintiff "pleads and proves" that available state remedies are inadequate to redress the wrong. *See e.g., Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995). Mishak has not done so, despite multiple opportunities to amend his Complaint and submit extensive summary judgment briefing.

Accordingly, even assuming Mishak's federal malicious prosecution claim based on procedural due process under the Fourteenth Amendment is a viable claim, Defendants are

---

[14] As Defendants correctly note, Mishak also fails to identify (either in the Second Amended Complaint or his summary judgment briefing) what process he believes was due and how that process was deficient.

entitled to summary judgment in their favor with respect to this claim as a matter of law.[15]

## 2. Disability Discrimination (Counts Five and Seven)

The Second Amended Complaint raises two claims of disability discrimination under the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*   In Count Five, Mishak

alleges Defendant City of Elyria violated the ADA by failing to accommodate his ADHD.  (Doc.

No. 36 at ¶¶ 84-93.)  Specifically, Mishak alleges (1) he is a disabled individual and was

regarded as such by Defendant City of Elyria; (2) he was capable of performing the essential

functions of his position with or without a reasonable accommodation; (3) he requested a

reasonable accommodation for his disability on August 1, 2016; and (4) Defendants failed to

---

[15]   Defendants also assert they are entitled to qualified immunity with respect to this claim. Qualified immunity protects public officials from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  The Sixth Circuit follows a "two-tiered inquiry" to determine if an official is entitled to qualified immunity.  *Austin v. Redford Twp. Police Dept.*, 690 F.3d 490, 496 (6th Cir. 2012).  *See also Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  The first step is to determine whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated.  *See Pearson*, 555 U.S. at 232; *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009); *Pritchard v. Hamilton Township Board of Trustees*, 2011 WL 2039066 at * 5 (6th Cir. May 25, 2011).  The second is to ask if the right at issue was "clearly established" when the event occurred such that  a reasonable official would have known that his conduct violated it.  *Pearson*, 555 U.S. at 232.  *See also Martin*, 712 F.3d at 957.  If either step is not satisfied, qualified immunity will shield the official from civil damages. *Martin*, 712 F.3d at 957. *See also Pearson*, 555 U.S. at 236.  Although it need not reach the issue, the Court finds Defendants herein would also be entitled to summary judgment in their favor on the basis of qualified immunity.  As discussed above, even viewing the allegations in his favor, Mishak has not satisfied the first step of the inquiry; i.e., he has not demonstrated his federal procedural due process rights under the Fourteenth Amendment have been violated by Serazin's alleged conduct.  Second, even if he had, Mishak has not demonstrated this particular right under the Fourteenth Amendment was "clearly established" in this context at the time of the events in question.  As discussed at length above, neither the United States Supreme Court or the Sixth Circuit have affirmatively recognized a federal malicious prosecution claim based on a procedural due process violation under the Fourteenth Amendment.

engage in an interactive process with him and, instead, terminated him on August 2, 2016 in violation of the ADA.  (*Id.*)

Count Seven alleges Defendant City of Elyria engaged in disparate treatment of Mishak in violation of the ADA.  (Doc. No. 36 at ¶¶ 103-111.)  Specifically, Mishak alleges Defendant City of Elyria scrutinized Mishak's time records from both the City of Elyria and the Village of Grafton but failed to investigate the time records of two other Elyria City Prosecutors (Scott Strait and Michelle Nedwick) who also represented other jurisdictions.  (*Id.*)  Mishak alleges Mr. Strait and Ms. Nedwick are similarly situated employees without disabilities.  (*Id.*)

To recover on a claim for discrimination under the ADA, a plaintiff must show that he (1) is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his disability.  *See Ferrari v. Ford Motor Company*, 826 F.3d 885, 891 (6th Cir. 2016); *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317, 321 (6th Cir. 2012) (en banc).  A plaintiff may do so "by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision, or by introducing indirect evidence of discrimination."  *Ferrari*, 826 F.3d at 891.

Here, Mishak relies on indirect evidence of discrimination.  (Doc. No. 60 at 33.)  The indirect method adapts the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under that framework, a plaintiff must first establish a *prima facie* case of discrimination.  *See Ferrari,* 826 F.3d at 891-892; *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011).  Once the plaintiff establishes a *prima facie* case under the indirect method, the burden shifts to the defendant to "offer a legitimate

explanation for its action." *Ferrari,* 826 F.3d at 892. If the defendant does so, the burden then shifts back to the plaintiff, who "must introduce evidence showing that the proffered explanation is pretextual." *Id.*

Defendants argue the City of Elyria is entitled to summary judgment in its favor because Mishak has failed to establish a *prima facie* case of disability discrimination.[16] (Doc. No. 46 at 32-35.) Specifically, Defendants maintain they had no notice that Mishak's ADHD was allegedly precluding him from accomplishing his job duties as a prosecutor until *after* the adverse employment action had been initiated. (*Id.* at 33.) Second, they argue Mishak cannot show that his suspension and/or termination were "because of" his ADHD. (*Id.*) Third, Defendants argue "Plaintiff's claimed ADHD simply does not relate to his workplace transgressions as the most serious of the violations do not arise from inattention but instead relate to mishandling of criminal matters due to improper legal analysis, failing to recognize obvious conflicts of interest, and violating express written Elyria policies." (*Id.* at 34.) Fourth, Defendants argue Mishak cannot establish he was qualified to act as an Elyria prosecutor with or without a reasonable accommodation. (*Id.*) Finally, Defendants maintain there is no evidence that the decision to suspend/terminate Mishak's employment was the result of intentional disability discrimination. (*Id.* at 34-35.)

Mishak argues there are genuine issues of material fact precluding summary judgment. (Doc. No. 60 at 33-36.) With respect to his failure to accommodate claim, Mishak argues he

---

[16] Defendants also move for summary judgment in Defendant Serazin's favor with respect to Mishak's ADA claims. However, as Mishak acknowledges, Counts Five and Seven of the Second Amended Complaint are asserted only against Defendant City of Elyria and do not raise ADA claims against Defendant Serazin.

"brought up his ADHD with Serazin often throughout [his] employment." (*Id*. at 34.) He maintains he specifically requested an accommodation on July 22, 2016 and provided a supporting letter from his neurologist on July 28, 2016, but Defendants terminated him shortly thereafter on August 2, 2016. (*Id*.) Mishak argues Defendants' purportedly legitimate, non-discriminatory reason for terminating him (i.e., his alleged "double dipping") is pretextual, asserting "the Ohio Auditor's Office cleared Plaintiff of this allegation and Serazin's conclusion that theft occurred was based on his willful blindness to Plaintiff's complete time records." (*Id*. at 35.)

With respect to his disparate treatment claim, Mishak argues City prosecutors Mr. Strait and Ms. Nedwick were "the most similarly situated individuals," as they each represented outside jurisdictions during the relevant time period. (*Id*.) Mishak argues "despite Strait and Nedwick representing outside jurisdictions, they were never investigated in an effort to determine whether they violated the May 1, 2014 policy or committed time theft." (*Id*.) He maintains "Plaintiff was treated differently, and because Serazin was aware of his disability, there is a fact question as to whether the disparate treatment resulted from Plaintiff's disability." (*Id*. at 36.)

In their Reply, Defendants argue Mishak's claims fail because "at no time during any of his prior workplace transgressions did Plaintiff attribute his job issues to ADHD; nor did he request an accommodation for his ADHD." (Doc. No. 63 at 28.) They maintain that "it is undisputed that it was not until after adverse employment actions were initiated that Plaintiff first attributed his workplace transgressions to his ADHD and requested an accommodation." (*Id*.) Defendants further assert that "the aforementioned timing of the suspension/termination in

35

relation to the notice precludes Plaintiff from showing the adverse employment actions were 'because of' his claimed disability." (*Id*.) Finally, Defendants argue "the decision to suspend/terminate Plaintiff's employment was due to his extensive history of workplace transgressions that culminated in his unethical double billing," which establishes both that there was no intentional disability discrimination and that Defendants' legitimate nondiscriminatory reason was not pretextual. (*Id*. at 29.)

The Court addresses Mishak's failure to accommodate and disparate treatment claims separately, below.

### *Failure to Accommodate*

To establish a *prima facie* case of failure to accommodate using indirect evidence, Mishak must show that (1) he is an individual with a disability; (2) he is otherwise qualified, with or without accommodation; (3) Defendants knew or had reason to know of his disability; (4) he requested an accommodation from Defendants; and (5) Defendants failed to provide an accommodation. *See Mosby-Meachem v. Memphis Light, Gas & Water Div*., 883 F.3d 595, 603 (6th Cir. 2018); *Johnson v. Cleveland City Sch. Dist*., 443 F. App'x 974, 982-83 (6th Cir. 2011); *Messenheimer v. Coastal Pet Products, Inc*., 2018 WL 3609488 at * 5 (N.D. Ohio July 27, 2018). Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer. *Id*. *See also Cash v. Siegel–Robert, Inc*., 548 Fed.Appx. 330, 334 (6th Cir.2013) (citing *Hedrick v. Western Reserve Care Sys*., 355 F.3d 444, 452 (6th Cir.2004)); *Burns v. Coca–Cola Enter*., 222 F.3d 247, 256 (6th Cir.2000); *Parsons v. Auto Club Group*, 565 Fed. Appx. 446, 448 (6th Cir. 2014).

The Sixth Circuit has found that "[a] disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Hedrick,* 355 F.3d at 457 (quotation marks and citation omitted). Interpretative guidelines by the Equal Employment Opportunity Commission state that generally "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." 29 C.F.R. pt. 1630 App. § 1630.9. Based on this guideline, the Sixth Circuit has concluded that "[t]he employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Parsons,* 565 Fed. Appx. at 448 (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046–47 (6th Cir.1998)). *See also Cash*, 548 Fed. Appx. at 334–35; *Messenheimer v. Coastal Pet Products, Inc.*, 2018 WL 3609488 at * 8 (N.D. Ohio July 27, 2018); *Salzbrun v. Warren County Community Services, Inc.*, 2017 WL 3008431 at *4-5 (S.D. Ohio July 14, 2017). Rather, "the employee must 'make it clear' both that he is making a request [for an accommodation] and that he is doing so because of his disability." *Waggoner v. Carlex Glass America, LLC.*, 682 Fed. Appx. 412, 416 (6th Cir. 2017) (citing *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 307 (6th Cir. 2016) and *Judge v. Landscape Forms, Inc.*, 592 Fed. Appx. 403, 407 (6th Cir. 2014)).

Here, Defendants first argue Mishak has not established a *prima facie* case because he has not demonstrated that, prior to the July 22, 2016 meeting, Defendants knew or had reason to know of his need for reasonable accommodation. (Doc. No. 63 at 27.) Defendants acknowledge Mishak's testimony that he spoke generally with Serazin over the years regarding the fact that he suffered from ADHD. Citing Sixth Circuit authority, however, Defendants maintain Mishak had

an affirmative duty to not only inform Defendants that he suffered from ADHD, but also to inform them that his ADHD effected his ability to perform his essential job functions and required a reasonable accommodation. (*Id*.) Defendants argue it is undisputed that Mishak failed to do so at any point prior to the July 22, 2016 meeting. Defendants further assert Mishak failed to establish a *prima facie* case because he has not come forward with any evidence that, prior to the July 22, 2016 meeting, he requested an accommodation for his ADHD. Therefore, Defendants maintain the City of Elyria is entitled to summary judgment in its favor as to Mishak's failure to accommodate claim as a matter of law.

Mishak was asked in deposition regarding communications he had with Serazin about his ADHD. He testified as follows:

> Q.   If I understand it, at some point in [the July 22, 2016] meeting you had raised the diagnosis that you had received of ADHD, correct?
>
> A.   I had brought up what I had brought up a lot of times in the past that we need to have more conversations. Less letter writing. I needed more one-on-one time to talk about these issues.
>
> \* \* \*
>
> Q.   Up to this point in time during your employment with the City of Elyria, have you ever had a discussion with Scott Serazin concerning your diagnosis of ADHD during your employment with Elyria?
>
> A.   I had very little discussions with Mr. Serazin.
>
> Q.   So the answer is "No?"
>
> A.   I mean, I don't -- is your question where I mentioned the term "ADHD," or that I asked for more personal one-on-one time, more interaction, and that he respond to my e-mails which he didn't. **I mean, I don't know if I mentioned, "Hey, can you respond to my e-mail because I have ADHD and I need feedback," no.**
>
> Q.   That's not what I'm asking. I'm asking: Did you ever discuss with Mr.

Serazin any difficulties that you were having with ADHD during the term of your employment with the City of Elyria up to the point of this meeting on July 22nd of 2016?

A.     Yes.  During the termination meeting I discussed the same issues I had been having and at that meeting I specifically talked about ADHD.

Q.     So that's the first time you attributed any difficulties you were having at Elyria to your diagnosis of ADHD?

       MR. ROMER:  Objection.  You can answer.

A.     Certainly not.

Q.     I'm trying to understand.  You tell me.

A.     So what I'm saying is one of the difficulties that I had with ADHD is that I need one-on-one time with people to understand what they expect of me to talk through things.  I need feedback.  I need more time with the supervisor. Scott Serazin ignored me.   He would not return my e-mails.   He communicated with me through third parties.  He made it very, very difficult for me to act out in his -- do my job the way I could by his expectations.

**Q.     Did you ever request this one-on-one time with Mr. Serazin as an accommodation for your ADHD?**

**A.     I scheduled meetings with Mr. Serazin that would be cancelled for some reason or the other.  I sent him e-mails that wouldn't be responded to. I attempted to talk to Mr. Serazin about difficulties I was having with work.  Specifically with my relationship with him that involved issues that I have always struggled with ADHD.**

**Q.     <u>Did you ever express it to him that you needed these things as an accommodation for your ADHD</u>?**

       **MR. ROMER:  Objection.  You can answer.**

**A.     <u>I don't know</u>.**

(Doc. Nos. 51 and 52; Mishak Depo. at Tr. 157-160.) (emphasis added).

     During the July 22, 2016 meeting, it is undisputed that Mishak told Serazin that his

ADHD attributed to the workplace issues and criticisms raised in the July 22, 2016 letter.  (Doc.

No. 52, Mishak Depo. at Tr. 160-161; Doc. No. 49, Serazin Depo. at Tr. 199-200.)  Serazin then

decided to suspend, rather than terminate, Mishak pending further information about his ADHD.

(Doc. No. 52, Mishak Depo. at Tr. 161; Doc. No. 49, Serazin Depo. at Tr. 199-200.)

On July 28, 2016, Mishak submitted a letter to Serazin from his physician Mark D. Bej,

M.D.  (Doc. No. 53 at PageID# 1316; Mishak Depo. Exh. S)  In this letter, Dr. Bej indicated he

had treated Mishak for approximately ten years for his ADHD.  (Doc. No. 53 at PageID#1316;

Mishak Depo. Exh. S.)  He described Mishak's symptoms, including difficulty sustaining

attention, hyperfocusing over irrelevant details, intolerance for routine, difficulty with task-

switching, poor time management, and impulsiveness.  (*Id*.)  In addition, Dr. Bej requested that

"reasonable accommodations be made for Atty. Mishak," including "frequent two-way

communication with an understanding that repetition and review of the needs and demands of a

given assigned task will often be necessary; the setting of mutually acceptable deadlines,

including interim deadlines; an allowance to take breaks from sedentary work as necessary to

clear and focus the mind; and the expectation that more time may be required by this employee

for a given task than might be expected for another otherwise similarly qualified employee."

(*Id*.)

After conducting "some research on the ADHD," Serazin concluded that "with respect to

the issue involving Grafton, that did not play a role in that."  (Doc. No. 49; Serazin Depo. at Tr.

202.)  On August 2, 2016, Serazin placed in the mail a letter to Mishak terminating his

employment "effective immediately."  (Doc. No. 49 at PageID# 930; Serazin Depo. at Tr. 205-

206, Exh. 16.)

The Court finds Mishak has failed to establish a *prima facie* case of disability

discrimination based on a failure to accommodate for two reasons. First, Mishak has failed to direct this Court's attention to any evidence in the record that, prior to the July 22, 2016 meeting, Defendants had knowledge that Mishak was "disabled" as a result of his ADHD. Second, Mishak has not directed this Court's attention to any evidence indicating he requested a reasonable accommodation for his ADHD at any time prior to the July 22, 2016 meeting.

While Defendants do not dispute (and the Court assumes for purposes of the instant motion) that Mishak spoke with Serazin about the fact that he suffered from ADHD, Mishak has not come forward with evidence showing that, prior to the July 22, 2016 meeting, he informed Defendants that he experienced certain mental limitations (such as inattention, difficulty focusing, poor time management, etc.) as a result of his ADHD *and* that these limitations negatively impacted his ability to perform his job as a prosecutor. Nor has Mishak cited any evidence that he requested Defendants provide him with reasonable accommodations to address such limitations prior to the July 22, 2016 meeting. To the contrary, when directly asked whether he advised Serazin that he needed more one-on-one time as an accommodation for his ADHD, Mishak testified "I don't know." (Doc. No. 52; Mishak Depo. at Tr. 160.) Mishak also acknowledged in deposition that "I don't know if I mentioned, 'Hey, can you respond to my e-mail because I have ADHD and I need feedback,' no." (Doc. No. 51; Mishak Depo. at Tr. 158.)

Mishak attempts to transfer the blame to Defendants, asserting he "attempted" to explain this to Serazin on several occasions but Serazin refused to meet with him or respond to his emails. However, Mishak does not explain why he failed to advise Defendants of his ADHD-related mental limitations and/or request an accommodation in writing (i.e., in the form of a

letter or email to Defendants from either himself or Dr. Bej) prior to the July 22, 2016 meeting. Mishak's failure to do so is particularly noteworthy given his history of workplace problems; i.e. his demotion to assistant prosecutor in December 2013 and July 2015 reprimand letter.[17]

District courts within this Circuit have found that ADA plaintiffs fail to establish a *prima facie* case of disability discrimination where an employer did not have knowledge of physical or mental limitations resulting from a plaintiff's disability. For example, in *Matuska v. Hinckley Tp.*, 56 F.Supp.2d 906, 917 (N.D. Ohio 1999), Judge Matia explained as follows:

> To satisfy this element of the *prima facie* case, Matuska must show that defendants knew of his substantial physical or mental limitation. The ADA distinguishes between knowledge of a disability versus knowledge of any limitations which the employee experiences as a result of that disability. *See* 42 U.S.C. § 12112(b)(5)(A); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 164 (5th Cir.1996). The distinction is significant because the ADA only requires employers to accommodate the known physical or mental limitations of the employee. 42 U.S.C. § 12112(b)(5)(A). Accordingly, if Matuska failed to inform the defendants of the limitations that he experienced as a result of his physical and mental impairments, then he cannot establish that the defendants knew or had reason to know of his disability.

*Id.* at 917. *See also Messenheimer*, 2018 WL 3609488 at * 8; *Deister v. AAA Auto Club of Michigan*, 91 F.Supp.3d 905, 925 (E.D. Mich. 2015) (stating "it is clear that the ADA makes employers responsible only for '*known* physical or mental limitations.') (citing 42 U.S.C. § 12112(b)(5)(A)) (emphasis added); *Gesegnet v. J.B. Hunt Transport, Inc*, 2011 WL 2119248 at

---

[17] As set forth at length *infra*, the working relationship between Mishak and Serazin began to deteriorate in July 2013, when Mishak was demoted from Chief Prosecutor for allegedly mishandling a search warrant application in a misdemeanor criminal case. Numerous other incidents occurred between 2014 and 2016 which prompted Serazin to express dissatisfaction with Mishak's job performance, including Mishak's handling of a civil contempt matter in February 2015, his handling of an income tax case in November 2015, and his handling of a bond revocation hearing in March 2016. Despite these incidents (and despite the fact he was being treated by Dr. Bej for ADHD during this time period), Mishak has not directed this Court's attention to any evidence indicating that he ever requested an accommodation based on his ADHD-related limitations prior to the July 22, 2016 meeting.

* 4 (W.D. Ky. May 26, 2011) (finding "it is clear that Plaintiff must inform Defendant of limitations that result from the disability.")

Here, although Mishak testified he informed Serazin that he suffered from ADHD, he does not direct this Court's attention to evidence showing he advised Defendants (prior to the July 22, 2016 meeting) that he suffered from mental limitations as a result of that condition that negatively effected his job performance. In other words, Mishak has not pointed to evidence that, in his communications with Defendants prior to the July 22, 2016 meeting, he "connected the dots" between his ADHD, his ADHD- related mental limitations, and the resultant need for accommodation.[18]

Moreover, even assuming Defendants were generally aware of Mishak's ADHD- related symptoms and, further, that this is sufficient to establish they were on notice he was "disabled," Mishak's claim fails for the additional and independent reason that he has not cited any evidence that he requested Defendants provide reasonable accommodation for his ADHD at any point prior to the July 22, 2016 meeting. As noted *supra,* an ADA plaintiff must establish that he "requested and was denied" a reasonable accommodation. *Lockard v. Gen. Motors Corp*., 52 Fed. Appx. 782, 786 (6th Cir.2002). *See also Pride v. Huntington National Bank*, 2018 WL 3956870 at * 6 (N.D. Ohio Aug. 17, 2018). The employer has no duty to provide a reasonable accommodation until plaintiff requests same. *Breitfelder v. Leis*, 151 Fed. Appx. 379, 386 (6th Cir.2005). To properly request a reasonable accommodation, plaintiff need not use any "magic

---

[18] Mishak does not argue that Defendants were "on notice" of his disability because his symptoms were "severe enough to alert" them that his ADHD was affecting his job performance. *See e.g., Yarberry v. Gregg Appliances, Inc.*, 625 Fed. Appx. 729, 737 (6th Cir. 2015); *Hedberg v. Ind. Bell Tel. Co., Inc*., 47 F.3d 928, 934 (7th Cir.1995) ("it may be that some symptoms are so obviously manifestations of an underlying disability that it would be reasonable to infer that an employer actually knew of the disability.").

43

words," like accommodation, disability, or ADA.  *Leeds v. Potter*, 249 Fed. Appx. 442, 449–50

(6th Cir.2007) (citing *Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir.2004)).  A plaintiff must,

however, tie the request, in context, to his existing medical restrictions.  *Id.  See also Judge*, 592

Fed. Appx at 407 ("The employee must also make it clear that the request is being made

because of the employee's disability."); *Kovac v. Superior Dairy, Inc*., 998 F.Supp.2d 609, 619

(N.D. Ohio 2014).

Mishak fails to cite any evidence that, prior to the July 22, 2016 meeting, he requested

Defendants provide reasonable accommodations for his ADHD-related mental limitations.

Indeed, when specifically asked whether he advised Serazin that he needed more one-on-one

time as an accommodation for his ADHD, Mishak testified "I don't know."  (Doc. No. 52;

Mishak Depo. at Tr. 160.)

Mishak argues his claim nonetheless survives summary judgment because he did advise

Serazin that his ADHD effected his job performance and request reasonable accommodation

during the July 22, 2016 meeting.  This argument is without merit.  As the Sixth Circuit

explained in *Parsons v. Auto Club Group*, 565 Fed. Appx. 446, 449 (6th Cir. 2014):

> "When an employee requests an accommodation for the first time only after it
> becomes clear that an adverse employment action is imminent, such a request can
> be 'too little, too late.'" *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 90 (1st
> Cir.2012); *see also Davila v. Qwest Corp*., 113 Fed.Appx. 849, 854 (10th
> Cir.2004) ("[E]xcusing workplace misconduct to provide a fresh start/second
> chance to an employee whose disability could be offered as an after-the-fact excuse
> is not a required accommodation under the ADA.").  By the time Parsons sat down
> with Keller—a day before Auto Club suspended Parsons and one week before it
> fired him—it had already conducted a five-month investigation that revealed
> Parsons had, among other things, violated its expenses policies, sought
> compensation for time when he did not work, and lied to internal investigators.

*Id*. at 449.  *See also Salzbrun*, 2017 WL 3008431 at * 4 (finding plaintiff had failed to timely

request an accommodation where employer had already taken "significant concrete steps to remove Plaintiff" at the time the request was made.)

It is undisputed that, at the time of the July 22, 2016 meeting, Serazin had already received an internal complaint that Mishak was "double dipping;" conducted an investigation that involved obtaining and comparing Mishak's time records from the Village of Grafton and City of Elyria; and made the determination to terminate Mishak's employment on the basis of that investigation as well as his previous history of alleged workplace transgressions. Based on this evidence (and Mishak's failure to request an accommodation at any point prior to the meeting), the Court finds Mishak's last ditch attempt to request an accommodation came "too little, too late" and is insufficient to preclude summary judgment in Defendants' favor. *See Parsons*, 565 Fed. Appx.a at 449; *Salzbrun*, 2017 WL 3008431 at * 4.

Accordingly, and for all the reason set forth above, the Court finds Defendant City of Elyria is entitled to summary judgment in its favor with respect to Mishak's ADA failure to accommodate claim.

### *Disparate Treatment*

To establish a claim for disability discrimination under the indirect method, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) he is disabled, (2) he is otherwise qualified for the position, with or without reasonable accommodation, (3) he suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. *Ferrari*, 826 F.3d at 891-892. *See also Mitchell v. United States Postal Service,* 2018 WL 3078564 at * fn 6 (6th Cir. June 21, 2018);

*Whitfield*, 639 F.3d at 259 (reaffirming that "*Monette* states the proper test" under the indirect method). In the context of a claim for disparate treatment, courts use the above framework, except that "the plaintiff can satisfy the fifth element of the *prima facie* case by showing that similarly situated non-disabled employees were treated more favorably." *Rosebrough v. Buckeye Valley High School*, 690 F.3d 427, 431 n. 2 (6th Cir. 2012) (citing *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir.1999)). *See also Rosebrough v. Buckeye Valley High School*, 582 Fed. Appx. 647, 651 (6th Cir. 2014); *Rentz v. Hospital*, 195 F.Supp.3d 933, 945 (E.D. Mich. 2016). In the disciplinary context, employees are "similarly situated" only if they have "engaged in acts of comparable seriousness." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006). Employees are not similarly situated if there are "differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Jones v. Potter*, 488 F.3d 397, 405 (6th Cir. 2007). *See also Waggoner*, 682 Fed. Appx. at 415.

Once the plaintiff establishes a *prima facie* case under the indirect method, the burden shifts to the defendant to offer a legitimate explanation for its action. *See, e.g., Ferrari*, 826 F.3d at 892. If the defendant does so, the burden then shifts back to the plaintiff, who "must introduce evidence showing that the proffered explanation is pretextual." *Id.*

Mishak argues City prosecutors Mr. Strait and Ms. Nedwick were "the most similarly situated individuals," as they each represented outside jurisdictions during the relevant time period. (Doc. No. 60 at 35.) He argues "despite Strait and Nedwick representing outside jurisdictions, they were never investigated in an effort to determine whether they violated the May 1, 2014 policy or committed time theft." (*Id.*) Mishak maintains "Plaintiff was treated

differently, and because Serazin was aware of his disability, there is a fact question as to whether the disparate treatment resulted from Plaintiff's disability." (*Id.* at 36.)

The Court finds Mishak has failed to establish a *prima facie* case of disparate treatment disability discrimination because he failed to show that "similarly situated non-disabled employees were treated more favorably." *Rosebrough*, 690 F.3d at 431 n. 2.  The record reflects an administrative assistant at the Prosecutor's Office, Cathy Darmstadt, made an informal, verbal complaint to either Serazin or his Chief of Staff, Amanda Deery, that Mishak was "work[ing] on cases for Grafton all day long but not claim[ing] it on his time sheet."  (Doc. No. 48; Darmstadt Depo. at Tr. 12, 15-16.)  Serazin thereafter initiated an investigation, during which he obtained Mishak's billing records from the Village of Grafton, and asked Ms. Deery to review and compare them against Mishak's Elyria timesheets.  (Doc. No. 57; Deery Depo. at Tr. 135-139.)  While City prosecutors Mr. Strait and Ms. Nedwick also represented outside jurisdictions, Mishak has not cited any evidence that Defendants received or were aware of any formal or informal complaints about either of these prosecutor's billing practices.[19]  For this reason, the Court finds neither Mr. Strait or Ms. Nedwick are "similarly situated" to Mishak for purposes of his disparate treatment claim.

Accordingly, Defendant City of Elyria is entitled to summary judgment in its favor with respect to this claim.

---

[19]  When asked why he did not investigate the time records of Mr. Strait or Ms. Nedwick, Serazin testified: "I didn't have any reason to."  (Doc. No. 49; Serazin Depo. at Tr. 233.)  He further stated he "never had any indication" that either Mr. Strait or Ms. Nedwick were billing during the workday to other jurisdictions.  (*Id.* at Tr. 231-232.)

### 3.    Retaliation under the ADA (Count Nine)[20]

In Count Nine of the Second Amended Complaint, Mishak alleges a claim against Defendant City of Elyria for retaliation for engaging in protected activities under the ADA. (Doc. No. 36 at ¶¶ 121-127.)  He alleges he is a disabled individual and requested a reasonable accommodation for his disability on August 1, 2016.  (*Id*. at ¶¶ 122-123.)  Mishak alleges Serazin responded by terminating his employment on August 2, 2016 and "further retaliating [by] making false statements to the press regarding Mishak on August 4, 2016." (*Id*. at ¶ 123.) He then asserts that "Serazin's conduct as alleged above constitutes retaliation against Mishak because Mishak engaged in activities protected by the ADA, causing Serazin to take materially adverse employment actions against Mishak."  (*Id*. at ¶ 124.)  Lastly, Serazin alleges "the reasons stated by Serazin for his conduct were not the true reasons, but instead were pretext for discrimination."  (*Id*.)

Defendants argue the City of Elyria is entitled to summary judgment in its favor with respect to this claim for several reasons.[21]  First, Defendants argue Mishak did not engage in "protected activity" because "Plaintiff's reference to his ADHD during the July 22, 2016 meeting and the subsequent letter from his doctor do not expressly oppose any allegedly discriminatory practice."  (Doc. No. 46 at 36.)  Second, Defendants maintain Mishak's

---

[20] The Second Amended Complaint also asserts a claim for retaliation under the Family & Medical Leave Act (Count Eleven).  (Doc. No. 36 at ¶¶ 135-141.)  In his Brief in Opposition, Mishak "does not contest Defendants' requests that the FMLA retaliation claim be dismissed." (Doc. No. 60 at 36, fn 16.)  Thus, summary judgment is granted in Defendants' favor with respect to Mishak's FMLA retaliation claim set forth in Count Eleven.

[21] Defendants also move for summary judgment in Defendant Serazin's favor with respect to Mishak's ADA Retaliation claim set forth in Count Nine.  However, Count Nine of the Second Amended Complaint is asserted only against Defendant City of Elyria and does not raise an ADA Retaliation claim against Defendant Serazin.

retaliation claim fails because "the adverse employment action was initiated prior to Plaintiff's alleged protected activity," noting "Mr. Serazin investigated the double billing and drafted the July 22, 2016 termination letter prior to Plaintiff raising his ADHD as an issue and prior to the doctor's letter." (*Id*. at 36-37.)

In response, Mishak argues Serazin's decision to suspend Mishak following the July 22, 2016 meeting was motivated, at least in part, by Mishak's request for an accommodation. (Doc. No. 60 at 36.) He emphasizes that he was terminated five (5) days after he submitted his letter from Dr. Bej, arguing temporal proximity alone can be enough to constitute evidence of a causal connection for the purposes of establishing a *prima facie* case of retaliation. (*Id*.) Lastly, Mishak asserts "Serazin's business justification for terminating Plaintiff was pretext because of the reckless nature in which Serazin determined Plaintiff stole Elyria time." (*Id*.)

In their Reply Brief, Defendants again argue Mishak cannot establish a causal link necessary for a retaliation claim because his "accommodation request occurred after adverse employment actions were initiated and imminent." (Doc. No. 63 at 30.) Defendants further assert "the timing of Plaintiff's alleged protected activity also prevents him from showing that his protected activity was the 'but for' cause of the alleged retaliation or that Elyria intentionally retaliated against Plaintiff for engaging in protected activity." (*Id*.)

The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203.

Because Mishak does not claim to have direct evidence of retaliation, this Court

analyzes his claim for ADA retaliation using the *McDonnell–Douglas* burden-shifting approach. *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir.2013). Under this approach, the plaintiff bears the initial burden to establish a *prima facie* case of retaliation, which requires a showing that (1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). *See also Blume v. Potter*, 289 Fed. Appx. 99, 105 (6th Cir. 2008); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003); *Welsh v. Automatic Data Processing, Inc.*, 954 F. Supp.2d 670, 684 (S.D. Ohio 2013). Once a *prima facie* case has been made, the burden shifts to the employer who must demonstrate that there was a legitimate, nondiscriminatory reason for its action. *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009). If that burden is satisfied, the plaintiff then bears the burden of showing the legitimate reason is pretextual. *Id.*

The Court finds Mishak has failed to establish a *prima facie* case of retaliation under the ADA because he has not shown a genuine issue of material fact exists that there was a causal connection between his protected activity (i.e., his request for an accommodation) and his suspension and/or termination. It is true the Sixth Circuit "has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir.2004) (emphasis added) *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). *See also, e.g., Seeger*

50

*v. Cincinnati Bell Tel. Co.*, LLC, 681 F.3d 274, 283–84 (6th Cir.2012). However, the United States Supreme Court and the Sixth Circuit have declined to recognize temporal proximity as indirect evidence of retaliation where an employer's decision to take an adverse employment action had already been made at the time the employee engaged in protected activity. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (finding that employers "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."); *Rodriques v. Delta Airlines, Inc.*, 644 Fed. Appx. 629, 636 (6th Cir. 2016); *Reynolds v. Federal Express Corp.*, 544 Fed. Appx. 611, 615 (6th Cir. 2013); *Reynolds v. Extendicare Health Servs., Inc.*, 257 Fed. Appx. 914, 919–20 (6th Cir.2007).[22] *See also Muhammad-Smith v. Psychiatric Solutions, Inc.*, 877 F.Supp.2d 552, 557-558 (N.D. Ohio 2012) ("If Defendants succeed in showing that the decision to terminate occurred before the request for FMLA leave, then the execution of that decision is not evidence of causality.")

As discussed *supra*, even viewing the evidence in a light most favorable to him, Mishak has not cited any evidence showing that, prior to the July 22, 2016 meeting, he either (1) advised Defendants that he suffered from mental limitations as a result of his ADHD and that those limitations negatively effected his job performance; or (2) requested an accommodation. At the time of July 22, 2016 meeting, Serazin had already completed his investigation into Mishak's alleged "double dipping" and decided to terminate his employment. (Doc. No. 49; Serazin Depo. at Tr. 159-160.) After Mishak raised the issue of his ADHD and requested an

---

[22] While these cases involved Title VII (rather than the ADA) retaliation claims, the Court finds them instructive on this issue. Moreover, while Defendants relied on both *Clark* and *Reynolds* in their Motion for Summary Judgment, Mishak has not argued these cases are either inapplicable or distinguishable.

accommodation, Serazin changed the termination letter to a suspension letter in order to allow Mishak to submit further information about this issue.[23]  (*Id.*)  The fact that Serazin terminated Mishak's employment several days letter "is immaterial in light of the fact that [Serazin] concededly was contemplating [the adverse employment action] before [he] learned of [the protected activity]."  *Breeden*, 532 U.S. at 272.  Serazin had already made the decision to take adverse employment action against Mishak (whether it be termination or suspension) when Mishak first requested an accommodation on July 22, 2016.  As both the Supreme Court and Sixth Circuit have explained, employers "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."  *Id.  See also Extendicare Health Servs., Inc*., 257 Fed. Appx. at 919–20.  Mishak cannot rely on temporal proximity alone to establish causation under these circumstances.  Moreover, he fails to articulate how other evidence in the records demonstrates he was suspended and/or terminated as a result of retaliatory animus relating to his ADHD.

Accordingly, Defendant City of Elyria is entitled to summary judgment in its favor with respect to Mishak's ADA Retaliation claim.

**B.      State Law Claims**

Defendants also seek summary judgment in their favor with respect to Mishak's state law claims for defamation (Count One), invasion of privacy (false light) (Count Two),

---

[23] As noted *supra*, the first page of Serazin's July 22, 2016 letter states that it is "Re: Termination of employment."  (Serazin Depo. Exh. 13; Doc. No. 49 at PageID#915.)  On the last page of the letter, Serazin initially wrote "Effectively immediately I am terminating your employment with the City of Elyria."  (*Id*. at PageID#925.)  However, after Mishak advised him that his ADHD-related limitations impacted his job performance and requested an accommodation, Serazin crossed out the word "terminating" and wrote the word "suspending" in its place.  (*Id*.)

malicious prosecution (Count Four), disability discrimination (Counts Six and Eight), and retaliation (Count Ten). (Doc. No. 46.)

A district court may decline to exercise supplemental jurisdiction over state law claims when the claims supporting original jurisdiction are dismissed. 28 U.S.C. § 1367(c)(3). While there is no categorical rule that the court is barred from exercising supplemental jurisdiction, the district court's decision to exercise supplemental jurisdiction depends on "judicial economy, convenience, fairness, and comity." *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir.2002) (citing *Musson Theatrical v. Federal Express*, 89 F.3d 1244, 1254 (6th Cir.2002)). The Sixth Circuit has held that "[w]hen all federal law claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims ...." *Musson Theatrical, Inc.*, 89 F.3d at 1255 (6th Cir.1996). *See also Moon v. Harrison Piping Supply,* 465 F.3d 719, 728 (6th Cir.2006) ("a federal court that has dismissed a plaintiff's federal claims should not ordinarily reach the plaintiff's state-law claims"); *Moss v. Mercy St. Anne Hospital*, 2014 WL 172530 at * 2 (N.D. Ohio Jan. 13, 2014).

The Court declines to exercise supplemental jurisdiction over Mishak's state law claims. Counts One, Two, Four, Six, Eight, and Ten of the Second Amended Complaint are clearly plead as state law claims. Moreover, the parties' argument and briefing with respect to Mishak's defamation, invasion of privacy, and state law malicious prosecution claims depend heavily on the interpretation and application of state law authority. The parties have not articulated any reason why the Court should exercise supplemental jurisdiction over Mishak's state law claims under these circumstances. Accordingly, and upon careful consideration, the Court determines Mishak's remaining claims should be adjudicated in state court. The Court

therefore declines to exercise supplemental jurisdiction over Mishak's state law claims (i.e., Counts One, Two, Four, Six, Eight, and Ten) and hereby dismisses said claims without prejudice.

### V. Conclusion

For the following reasons, Defendants' Motion for Summary Judgment (Doc. No. 46) is GRANTED as to Mishak's federal claims. The Court declines to exercise supplemental jurisdiction over Mishak's state law claims (i.e., Counts One, Two, Four, Six, Eight, and Ten) and hereby dismisses said claims without prejudice.

**IT IS SO ORDERED.**


Date: October 30, 2018                                    *s/ Jonathan D. Greenberg*
                                                         Jonathan D. Greenberg
                                                         U.S. Magistrate Judge